UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BREVET HOLDINGS, LLC et al.,<br><br>                    Plaintiffs,<br><br>       -against-<br><br>ENASCOR, LLC et ano.,<br><br>                    Defendants. | No. 21-cv-1540 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

CYRULNIK FATTARUSO LLP
55 Broadway, Third Floor
New York, New York 10006
646 844 2466
jcyrulnik@cf-llp.com

*Counsel for Defendants*

**CONTENTS**

Table of Cases ................................................................................................................. ii

Preliminary Statement ...................................................................................................... 1

Statement of Facts ............................................................................................................ 3

Procedural History ........................................................................................................... 5

Argument .......................................................................................................................... 6

    I.  Plaintiffs' Claims Are Preempted by the Federal Copyright Act Because
       Brevet Alleges that Enascor and Iacovacci Copied Brevet's Documents .................. 7

   II.  Brevet Also Fails to Allege Facts Sufficient to State Its Claims ............................... 10

       A.  Brevet Fails to State a Claim for Misappropriation (Counts I and III)
           Because It Does Not Allege Facts Establishing Misuse of Confidential
           Information or Consumer Confusion .............................................................. 10

       B.  Brevet Fails to State a Claim for Palming Off (Count II) Because
           Enascor and Iacovacci Did Not Hold Themselves Out as Brevet or as
           Selling Brevet's Services ............................................................................... 13

       C.  Brevet Fails to State a Claim for Unjust Enrichment (Count IV)
           Because Brevet Has Not Alleged Facts Showing that Enascor Was
           Enriched at Brevet's Expense ......................................................................... 14

       D.  The Brevet Short Duration LLCs Fail to State a Claim for Breach of
           Contract (Count V) For Multiple Reasons, Including Because Brevet
           Has Not Adequately Alleged Breach or Damages .......................................... 14

       E.  Brevet's Tort Claims (Counts I-IV) Are Also Barred by the
           Independent Tort Doctrine ............................................................................. 17

       F.  Brevet Fails to Differentiate Among the Plaintiff Entities,
           Underscoring Its Failure to Adequately Allege Ownership or Damages ....... 18

Conclusion ...................................................................................................................... 19

# TABLE OF CASES

*Am. Inst. of Chem. Engineers v. Reber-Friel Co.*,
  682 F.2d 382 (2d Cir. 1982).................................................................................... 10

*Am. Movie Classics Co. v. Turner Entm't Co.*,
  922 F. Supp. 926 (S.D.N.Y. 1996)............................................................................ 9

*Apotex Corp. v. Hospira Healthcare India Private Ltd.*,
  2019 WL 3066328 (S.D.N.Y. 2019).................................................................. 17, 18

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
  356 F. Supp. 3d 379 (S.D.N.Y. 2019)............................................................... 10, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................... 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)........................................................................................ 11

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) .................................................................................. 18

*Boyle v. Stephens Inc.*,
  1998 WL 690816 (S.D.N.Y. Sept. 29, 1998)............................................................ 8

*Briarpatch Ltd., v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004)................................................................................... 7, 9

*Clark-Fitzpatrick v. Long Island R.R. Co.*,
  516 N.E.2d 190 (N.Y. 1987)..................................................................................... 17

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000)..................................................................................... 16

*Daniels v. Dover Downs Hotel & Casino Valet Parking*,
  2017 WL 1929654 (Del. Super. Ct. May 9, 2017) .................................................. 16

*Defiance Button Mach. Co. v. C & C Metal Prod. Corp.*,
  759 F.2d 1053 (2d Cir. 1985)................................................................................... 10

*Dormitory Auth. v. Samson Constr. Co.*,
  94 N.E.3d 456 (N.Y. 2018)....................................................................................... 17

*Dyer v. V.P. Records Retail Outlet, Inc.*,
  2008 WL 2876494 (S.D.N.Y. 2008 July 24, 2008) ............................................. 7, 9

ii

*Faiveley Transp. USA, Inc. v. Wabtec Corp.*,
    758 F. Supp. 2d 211 (S.D.N.Y. 2010) ................................................................ 11

*Faktor v. Yahoo! Inc.*,
    2013 WL 1641180 (S.D.N.Y. Apr. 16, 2013) ...................................................... 8

*Hu v. Windhaven Ins. Co.*,
    2015 WL 12835683 (M.D. Fla. Mar. 16, 2015) ................................................ 18

*Hydrogen Master Rts., Ltd. v. Weston*,
    228 F. Supp. 3d 320 (D. Del. 2017) .................................................................. 17

*Integrative Nutrition, Inc. v. Academy of Healing Nutrition*,
    476 F. Supp. 2d 291 (S.D.N.Y. 2007) ............................................................. 8, 9

*Interim Health Care v. Fournier*,
    1994 WL 89007 (Del. Ch. Feb. 28, 1994) ........................................................ 17

*ITC Ltd. v. Punchgini, Inc.*,
    880 N.E.2d 852 (N.Y. 2007) .............................................................................. 14

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995) .................................................................................. 13

*Kumaran v. Northland Energy Trading, LLC*,
    2021 WL 797113 (S.D.N.Y. 2021) .................................................................... 18

*Kuncyia v. Melville Realty Co.*,
    755 F. Supp. 566 (S.D.N.Y. 1990) ...................................................................... 9

*Kuroda v. SPJS Holdings*,
    971 A.2d 872 (Del. Ch. 2009) ........................................................................... 17

*Mosallem v. Berenson*,
    905 N.Y.S.2d 575 (N.Y. App. Div. 2010) ........................................................... 6

*Newton Garment Carriers v. Consol. Carriers Corp.*,
    673 N.Y.S.2d 631 (N.Y. App. Div. 1998) ......................................................... 11

*Nguyen v. New Link Genetics Corp.*,
    297 F. Supp. 3d 472 (S.D.N.Y. 2018) ................................................................. 6

*Noval Williams Films LLC v. Branca*,
    2018 WL 389092 (S.D.N.Y. Jan. 11, 2018) ......................................................... 9

*OP Sols., Inc. v. Crowell & Moring, LLP*,
    900 N.Y.S.2d 48 (N.Y. App. Div. 2010) ............................................................ 18

*Patrick v. Francis*,
    887 F. Supp. 481 (W.D.N.Y. 1995) ..................................................................... 9

*Pauwels v. Deloitte LLP*,
   2020 WL 818742 (S.D.N.Y. Feb. 19, 2020)......................................................................... 11, 14

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
   117 F. Supp. 3d 613 (D. Del. 2015)........................................................................................ 16

*Regnante v. Sec. & Exch. Officials*,
   134 F. Supp. 3d 749 (S.D.N.Y. 2015).................................................................................... 14

*Shepard v. Eur. Pressphoto Agency*,
   291 F. Supp. 3d 465 (S.D.N.Y. 2017)...................................................................................... 9

*Walker v. Time Life Films*,
   615 F. Supp. 430 (S.D.N.Y. 1985)............................................................................................ 9

Defendants, Enascor, LLC and Paul Iacovacci, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

While this lawsuit is new, the disputes between the parties are long-running. This latest suit, arising from Enascor and Iacovacci's overtures to prospective investors in their new fund, unfortunately represents an opportunistic attempt by Brevet to disrupt a direct competitor's emerging business and to manufacture additional litigation burden and expense based on strained, conclusory allegations that do not state cognizable harm. Despite all its allegations of Enascor and Iacovacci's purported copying of Brevet's documents, Brevet does not assert a copyright claim—presumably recognizing that such a claim cannot succeed. But Brevet's failure to plead a copyright claim does not change that the various claims Brevet has elected to try instead are all preempted.

Paul Iacovacci first brought suit against Brevet Holdings and the Brevet Short Duration LLCs in New York State court in October 2016 when, after months of negotiating the terms of his retirement, his former partners wrongfully purported to terminate him for cause, in an effort to cut him off from the many millions of dollars in contractual payouts to which he would otherwise have been entitled post-retirement. Upon learning that his former partners had gained unauthorized access to his home computer in their search for documents to use against him in the wrongful termination dispute, Iacovacci also brought claims in this Court for violation of federal computer and wiretap statutes.

Now, with his noncompete provisions indisputably expired, and free to compete against Brevet, Iacovacci has started a new business, Enascor. Unsurprisingly, in his new business, Iacovacci is continuing to do what he does best: sourcing loan transactions that create attractive opportunities for potential investors. Naturally, in marketing his business, Iacovacci has touted

his experience and described what his company does. Because Enascor operates in the same space as Brevet (and other similarly situated short-term lenders), Iacovacci has described his many years of experience in the space and the high-level description of what his fund does in ways that unsurprisingly also describe Brevet's business. Brevet now claims that Enascor and Iacovacci have engaged in "dishonest and deceitful competition" by "shamefully" copying Brevet's "proprietary and confidential" information.

Relying on grandiose characterizations rather than present the Court with the underlying facts, Brevet elected to *remove* the documents and quotations to documents that give rise to its claims in its latest amendment of the complaint. But the Court can take judicial notice of those documents, which reveal the deflating reality that Enascor and Iacovacci have not misused Brevet's "proprietary or confidential" information, and the simple one-page "about us" introduction documents Brevet accuses Enascor and Iacovacci of copying are generic, general-purpose marketing materials designed for sharing with third-party "prospective investors and borrowers"—outside parties to whom Brevet wanted to describe what it does.

Brevet's claim is a copying claim, governed exclusively by federal copyright law, and the claims it tries to assert here in lieu of a copyright claim are thus preempted. Moreover, looking past Brevet's invective and conclusory assertions to the *facts*—including those reflected in the documents on which Brevet relies but elected to withhold from the Court—Brevet's allegations fail to state a claim. As discussed below, Brevet fails to allege facts establishing that Enascor or Iacovacci misused actual confidential information or caused any actual or likely customer confusion, that Enascor ever marketed itself as Brevet, that Enascor was enriched at Brevet's expense, or that Iacovacci breached any contractual provision. Indeed, Brevet does not even state which contractual provision Iacovacci allegedly breached and how. Nor does it allege which Brevet entity owned any purportedly protected information or which if any Brevet entity was

harmed or how. Accordingly, Brevet's Second Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

For years, Defendant Paul Iacovacci was a Managing Director of Brevet, responsible for sourcing transactions for Brevet's short-duration loan fund. SAC ¶¶ 1, 32. Two Brevet "Short Duration LLCs," Plaintiffs Brevet Short Duration Holdings, LLC and Brevet Short Duration Partners, LLC, along with Plaintiff Brevet Holdings, LLC, are affiliates of Plaintiff Brevet Capital Management, LLC, a registered investment adviser. *Id.* ¶¶ 11, 18, 35. Iacovacci left Brevet in 2016. *Id.* ¶ 1. The circumstances of his separation are the subject of pending wrongful-termination and related claims against Brevet in New York State court (No. 158735/2016), as well as federal hacking claims against Brevet in this Court (No. 18-cv-8048).

While Iacovacci and Brevet have been in litigation since Iacovacci's departure in 2016, it was only recently—after his non-competition restrictions had undisputedly expired—that Iacovacci launched Enascor, a hedge fund that competes against Brevet. *Id.* ¶ 1. In response, Brevet commenced this latest lawsuit among the parties, asserting claims against Iacovacci and Enascor based on alleged copying of Brevet's purportedly "confidential and proprietary" information. *Id.* ¶ 14.

According to Brevet, Iacovacci and Enascor stole information "describing the unique manner in which Brevet brings value to investors as well as the actual deals Brevet has done, together with the internal documentation of those deals." *Id.* ¶ 4. Brevet alleges in general terms, but does not attach to the Second Amended Complaint, the four sources of purportedly stolen "proprietary and confidential" information on which its claims are predicated.

*First*, Brevet refers to so-called "Communications" that "describe Brevet's business in carefully vetted, proprietary terms (two paragraphs); set forth examples of actual Brevet

borrowers, using Brevet's unique or differentiated method for doing so," and "set forth Brevet's actual experience in various types of financing." *Id.* ¶ 22. In reality, this "Communication" is a basic "about us" introduction email to prospective investors and borrowers, advertising Brevet's services and mirroring the type of content on Brevet's public website at the time. *See* MTD Ex. D. Iacovacci, who routinely sent the introduction email to prospective borrowers as part of his deal-sourcing responsibilities, emailed himself a copy of the introduction email in 2014, more than a year before he left Brevet and more than five years before he launched Enascor. SAC ¶ 25. Brevet alleges that Enascor and Iacovacci used the introduction email "virtually verbatim." *Id.* ¶ 26.

*Second*, Brevet references a one-page "Firm Overview" document containing what Brevet characterizes as "carefully honed articulations" of Brevet's "attributes." *Id.* ¶ 28. This "one-pager" overview of Brevet's short-duration loan business is likewise a basic introductory "about us" advertising document for potential investors or borrowers. *See* MTD Ex. F. Brevet alleges that Enascor and Iacovacci "used or paraphrased" much of Brevet's "one-pager" overview. SAC ¶ 28.

*Third*, Brevet contends that Enascor's investor presentation "copies, at least in part, the form and content of one or more proprietary and confidential Brevet investor presentations." SAC ¶ 30. Brevet does not identify Enascor's purported copying in its pleading but has done so in other court papers: the purported copying consists of two charts depicting general deal-sourcing and lending concepts in ways that do not match (and only partially resemble) similar charts in a lengthy October 2015 presentation of Brevet Direct Lending Intermediate Duration Fund, L.P. (which is not a party to this action). *See* MTD Ex. G (Brevet's side-by-side comparison of two purportedly copied charts). The two presentations are otherwise different.

*Compare* MTD Exs. H (32- page Enascor presentation), I (24-page Intermediation Duration Fund presentation).

   *Fourth and finally*, Brevet alleges that Enascor and Iacovacci circulated an "Example Transactions Document" listing "proprietary and confidential information concerning certain transactions engaged in by Brevet." SAC ¶ 16. Again, Brevet does not attach the document to its pleading but has done so in other court papers: the document lists nine *anonymized* examples of transactions from Iacovacci's tenure at Brevet. MTD Ex. J at 3. It is attached to an email in which Iacovacci states that he is providing materials on his background and experience, among other things. *Id.* at 1. Brevet acknowledges that Iacovacci "was on Brevet'[s] investment committee" that considered the nine listed transactions and "was involved in sourcing some (but not all) of the transactions." SAC ¶ 32. Brevet alleges that Iacovacci and Enascor make it "appear that these are transactions for which Iacovacci was largely or primarily responsible." *Id.* On its face, however, the document does not contain any such representation. MTD Ex. J.

## PROCEDURAL HISTORY

   Brevet filed this action against Enascor and Iacovacci in New York State court on December 24, 2020, asserting state-law and federal Lanham Act claims. Enascor removed the action to this Court on January 20, 2021, on federal question grounds (Case No. 21-cv-516). Two days later, on January 22, Brevet improperly filed an amended complaint on the state-court docket, removing its federal Lanham Act claims. Brevet then filed a motion for remand with this Court, arguing that it had eliminated the basis for federal question jurisdiction by dropping its Lanham Act claims. On February 19, based on Brevet's representation for the first time at oral argument that it would dismiss its Lanham Act claims with prejudice, the Court remanded. Iacovacci then timely removed the action the same day on diversity grounds. At the Court's instruction, on March 26, 2021, Brevet filed its amended complaint (solely in redacted form) on

the federal docket. Dkt. 19-1; *see also* Dkt. 27 (corrected on April 1 to reflect federal rather than state-court caption, but still redacted).

Separately, in connection with motion practice before the New York State court, Brevet had filed the documents it alleges Enascor and Iacovacci to have copied, and Brevet also filed motions to have those documents filed under seal. On March 25, 2021, after oral argument on Brevet's sealing motions, the New York State court denied Brevet's motions and ruled that Brevet had "failed to demonstrate good cause to seal." MTD Ex. C at 2. The state court found "no evidence in the record as to why the documents are so confidential or sensitive that public access to them should be restricted." *Id.* at 1-2 (quoting *Mosallem v. Berenson*, 905 N.Y.S.2d 575, 579 (N.Y. App. Div. 2010)).

On April 9, 2021, Brevet amended again, filing this Second Amended Complaint, which asserts five claims: (i) unfair competition (misappropriation) against Enascor and Iacovacci; (ii) unfair competition (palming off) against Iacovacci and Enascor; (iii) misappropriation against Iacovacci and Enascor; (iv) unjust enrichment, in the alternative, against Enascor; and (v) breach of contract against Iacovacci on behalf of the two Brevet "Short Duration LLCs" under their LLC agreements. Unlike its original and first amended complaints, Brevet's Second Amended Complaint conspicuously does *not* attach or quote any of the documents Brevet alleges Enascor and Iacovacci copied, instead providing general descriptions and characterizations of the allegedly misappropriated information. Because they are referred to in in the Complaint, the underlying documents are appropriately considered on this motion. *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 489 n.3 (S.D.N.Y. 2018).

## ARGUMENT

Brevet's claims should be dismissed in their entirety, on multiple independently sufficient grounds. *First*, Brevet's state-law claims are premised on Enascor and Iacovacci's alleged

copying ("word-for-word" or "verbatim") of Brevet's purportedly proprietary documents. *E.g.*, SAC ¶¶ 4, 26, 28. Such claims are pre-empted by federal copyright law, compelling dismissal. *Second*, each of Brevet's claims independently fails to plead the required elements of the claim, including for failure to allege actual confidential or proprietary information that Enascor or Iacovacci misused and for failure to allege any losses Brevet has actually incurred. Brevet's reliance on conclusory characterizations of information as confidential or proprietary do not suffice, and the underlying documents Brevet specifically decided to omit from its latest pleading show that those conclusory allegations lack merit. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations are "not entitled to be assumed true").

## I.   Plaintiffs' Claims Are Preempted by the Federal Copyright Act Because Brevet Alleges that Enascor and Iacovacci Copied Brevet's Documents

Brevet's claims are premised on Enascor and Iacovacci's alleged copying of written documents and thus the Copyright Act exclusively governs, preempting Brevet's various state-law claims. Brevet's allegations concern "Enascor written communications" that purportedly used "proprietary descriptions identical to Brevet's" to describe Enascor's business. SAC ¶ 14. Brevet alleges that it describes its business in "carefully vetted, proprietary terms" (*id.* ¶ 22) and that Enascor and Iacovacci have copied those descriptions "word-for-word," "verbatim," or "virtually verbatim" (*id.* ¶¶ 4, 22, 28). These claims are preempted by the Copyright Act.

The Copyright Act "exclusively governs a claim" where (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act" and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Briarpatch Ltd., v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *see also Dyer v. V.P. Records Retail Outlet, Inc.*, 2008 WL 2876494, at *3 (S.D.N.Y. 2008 July 24, 2008) (holding unfair competition and unjust enrichment claims preempted; 17 U.S.C. § 301 (rights covered by Copyright Act "are governed

exclusively by this statute"). Under this analysis, Brevet's claims are preempted and must be dismissed.

*First*, the documents underlying Brevet's claims fall squarely within the type of works protected by the Copyright Act. The claims are predicated on alleged copying of Brevet's marketing materials, advertising, and other documents—specifically, an introductory email, a "one-pager" overview of the business, an October 2015 investor presentation, and "several" other "proprietary and confidential documents." SAC ¶¶ 21-31; MTD Exs. D, F-J. These materials fall squarely within the scope of copyright protection. *See Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F. Supp. 2d 291, 293-96 (S.D.N.Y. 2007) (business formula that included "original marketing and promotional materials, such as a website and promotional brochure; retention of visiting lecturers; and a flexible tuition payment program" held to be within scope of copyright protection); *see also Faktor v. Yahoo! Inc.*, 2013 WL 1641180, at *4 (S.D.N.Y. Apr. 16, 2013) (confidential information regarding television series, including a one-page synopsis, held to be within the scope of copyright protection); *Boyle v. Stephens Inc.*, 1998 WL 690816, at *5 (S.D.N.Y. Sept. 29, 1998) (not only written documents, but also ideas and concepts embodied in written material, held to be within the scope of copyright preemption).

Brevet's reliance on Section 7.3 of the Brevet Short Duration LLC Agreements further underscores that Brevet's claims fall within the scope of copyright protection. Brevet states that Section 7.3, entitled "Company Property," addresses the scope of LLCs' ownership of "Company writings," among other "intangible or intellectual property rights." SAC ¶ 35. Thus, while Section 7.3 does not provide a basis for a breach of contract claim here (*see* Section II.D below), it would be potentially relevant to an analysis of the parties' respective ownership interests in the context of a copyright dispute. *Cf. Noval Williams Films LLC v. Branca*, 2018

WL 389092, at *4 (S.D.N.Y. Jan. 11, 2018) ("Copyright in a work vests initially in the author of the work, *unless ownership is governed by a contract*.") (emphasis added).

*Second*, Brevet's claims seek "to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights protected by copyright law." *Briarpatch*, 373 F.3d at 305. Where, as here, unfair competition and misappropriation claims are "grounded solely in the copying of a plaintiff's protected expression," they are preempted. *Dyer*, 2008 WL 2876494, at *5 (dismissing unfair competition and misappropriation claims); *Walker v. Time Life Films*, 615 F. Supp. 430, 441 (S.D.N.Y. 1985) (unfair competition claim seeking protection against copying held to be "based on a right equivalent to rights within the scope of" the Copyright Act and thus "defeated by 17 U.S.C. § 301(a)").

Similarly, a "claim that a defendant has reproduced the plaintiff's work and sold it under the defendant's name—even if denominated 'passing off' by the plaintiff—is preempted by the Copyright Act." *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 934 (S.D.N.Y. 1996); *see also Integrative Nutrition*, 476 F. Supp. 2d at 297 (dismissing "passing off" claim on preemption grounds).

Nor can Brevet circumvent preemption by alleging unjust enrichment in the alternative, as unjust enrichment predicated on copying another's works is likewise "preempted as a state law right equivalent to exclusive rights within the general scope of copyright." *Kuncyia v. Melville Realty Co.*, 755 F. Supp. 566, 577 (S.D.N.Y. 1990) (dismissing unjust enrichment claim); *see also Patrick v. Francis*, 887 F. Supp. 481, 484 (W.D.N.Y. 1995) ("The claim that the unauthorized copying of plaintiff's work unjustly enriched defendants is equivalent to exclusive rights within the general scope of copyright.").

Breach of contract claims arising from unauthorized copying are likewise preempted. *See Shepard v. Eur. Pressphoto Agency*, 291 F. Supp. 3d 465, 472 (S.D.N.Y. 2017) (claim that

defendant breached a contract by reproducing the plaintiffs' property held to be preempted by Copyright Act).

Here, Brevet's theory is that Enascor and Iacovacci copied Brevet's language, "verbatim" or "virtually verbatim," including a "virtual wholesale adoption of substantive parts of Brevet's one-pager." SAC ¶¶ 26, 28. Brevet further alleges, for example, that Enascor's investor presentation "copies, at least in part, the form and content" of Brevet's investor presentation, and that Enascor and Iacovacci created "an identically named 'Firm Overview' for Enascor," in which they "used or paraphrased" Brevet's words. SAC ¶¶ 28, 30. Such claims are preempted.

## II.   Brevet Also Fails to Allege Facts Sufficient to State Its Claims

Copyright Act aside, none of Brevet's claims sufficiently states a claim, and they should therefore be dismissed for that independently sufficient reason as well.

### A.   Brevet Fails to State a Claim for Misappropriation (Counts I and III) Because It Does Not Allege Facts Establishing Misuse of Confidential Information or Consumer Confusion

Brevet's theory of misappropriation—that Enascor and Iacovacci misused Brevet's "proprietary and confidential information"—falls flat because Brevet's conclusory allegations of confidentiality and misuse fail to withstand even basic scrutiny. "To state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage." *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 402-03 (S.D.N.Y. 2019). There can be no misappropriation claim for publicly disseminated information. *See Am. Inst. of Chem. Engineers v. Reber-Friel Co.*, 682 F.2d 382, 391 (2d Cir. 1982) (rejecting unfair competition and breach of trust claims where "much of the relevant information has been made available to the public through brochures and promotional materials"); *Defiance Button Mach. Co. v. C & C Metal Prod. Corp.*, 759 F.2d 1053, 1063 (2d Cir. 1985) (even "inadvertent or

accidental" disclosure bars claim). And the Court does not accept a plaintiff's conclusory

assertion that information is confidential. *See Newton Garment Carriers v. Consol. Carriers*

*Corp.,* 673 N.Y.S.2d 631, 632 (N.Y. App. Div. 1998) (rejecting "claim that the customer list is a

trade secret" where pleading otherwise indicated that the information "was not private, but rather

in the public domain"). Where "an unfair competition claim and a misappropriation claim arise

from the same factual predicate," the "two claims generally rise or fall together." *Pauwels v.*

*Deloitte LLP*, 2020 WL 818742, at *11 (S.D.N.Y. Feb. 19, 2020) (quoting *Faiveley Transp.*

*USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 221 (S.D.N.Y. 2010)).

The four alleged instances of purportedly misappropriated information Brevet identified

in its Second Amended Complaint do not support its claims under these principles, as

underscored by the documents on which Brevet heavily relied but does not attach to its pleading.

*See Nguyen*, 297 F. Supp. at 489 n.3 ("In resolving a motion to dismiss, a court may consider,"

among other things, "'documents possessed by or known to the plaintiff upon which it relied in

bringing the suit.'") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007)).

*First*, Brevet identifies an introductory email ("the 'Communications'"), which it

characterizes as the product "of a community of thought concerning how best to portray and

articulate Brevet's business, with key structural and financial information that would be most

helpful to the targeted recipients." SAC ¶ 21. Brevet alleges that the introductory email describes

Brevet's business "in carefully vetted, proprietary terms" and describes "examples of Brevet

borrowers, using Brevet's unique or differentiated method for doing so." *Id.* ¶ 22. That "unique

or differentiated method" consists of using "factual vignettes." *Id.* ¶ 23. Rather than attach the

introductory email to its pleading for the Court to review, Brevet relies on its creative depiction.

But in reality, the introductory email is merely a basic, high-level marketing summary of

11

Brevet's business *designed for the public*, not meaningfully distinguishable from the basic introductory information companies routinely post on their websites. *See* MTD Ex. D. As is clear from the document, and as Brevet admits, such emails were designed "for use with both *prospective* investors and borrowers"—outside parties with whom Brevet was seeking to establish a relationship. SAC ¶ 21 (emphasis added). While Brevet strains to create an illusion that this simple and widely disseminated introductory email was somehow sensitive and confidential, Brevet does not and cannot deny that multiple iterations of the email containing the same information were disseminated to thousands of recipients, without any promise by prospective investors or borrowers to keep the information confidential.

*Second*, Brevet points to a "one-pager" overview of the company, similarly designed to introduce and market Brevet to outside prospective investors and borrowers. SAC ¶ 28; MTD Ex. F. As with the introductory email, Brevet does not and cannot deny this high-level, bullet-point "about us" overview was widely disseminated without any promise by prospective investors or borrowers to keep the information confidential.

*Third*, Brevet refers to an Enascor "investor presentation" that it contends is copied "at least in part" from "one or more proprietary and confidential Brevet investor presentations." SAC ¶ 30. Again, Brevet does not attach any purported example of copying to its pleading but has filed such documents in other cases. Specifically, Brevet has relied upon a presentation for Brevet Direct Lending – Intermediate Duration Fund, L.P. But that entity is not even a party to this action. *See* MTD Ex. I. Thus, as a threshold matter, none of the Plaintiffs here have standing to pursue a claim for misappropriating Intermediate Duration Fund, L.P.'s presentation. Moreover, the supposed copying "at least in part" that the Second Amended Complaint identifies from this non-party entity's presentation consists solely of similarities in two charts depicting basic, high-level sourcing and lending concepts. Those unremarkable similarities, plucked from a

32-page Enascor presentation, cannot form the basis for any plausible claim for damages to any of the Plaintiffs.

*Fourth*, Brevet contends that Enascor and Iacovacci created and circulated an "Example Transactions Document" listing as part of Iacovacci's background certain Brevet transactions. SAC ¶ 16, MTD Ex. J. Brevet *admits* that Iacovacci "was on Brevet's investment committee with respect to the transactions" and "was involved in sourcing some (but not all) of the transactions." SAC ¶ 32. This is not an example of misappropriation at all; it is just Iacovacci describing his background experience and knowledge. MTD Ex. J at 1 (Iacovacci to recipient: "As discussed, I am enclosing some materials: on our strategy, past deals, *my background* and a very large deal I am looking for investors.") (emphasis added).

Brevet's conclusory allegations of harm or likely confusion based on these facts are not plausible, nor has Brevet alleged any actual confusion. "In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief." *Arcadia Biosciences*, 356 F. Supp. 3d at 403 (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995)). Nor can Brevet salvage its deficient claims by relying on its stated hope that "discovery" may "disclose additional theft and misappropriation." SAC ¶ 4; *see Arcadia Biosciences, Inc.*, 356 F. Supp. 3d at 398 (dismissing complaint that was premised on additional instances of misuse of confidential information being uncovered during discovery).

### B. Brevet Fails to State a Claim for Palming Off (Count II) Because Enascor and Iacovacci Did Not Hold Themselves Out as Brevet or as Selling Brevet's Services

Brevet's "palming off" claim fails because Brevet does not and cannot allege that Enascor and Iacovacci attempted to induce anyone to use Enascor's services by making them believe they were getting Brevet's services. "Palming off" or "passing off" is simply "the sale of the goods of one manufacturer as those of another." *ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852,

13

858 (N.Y. 2007). Brevet alleges nothing of the sort. Indeed, the documents Brevet relied on for its allegations and had attached to its original and first amended pleading, but removed from its Second Amended Complaint, show not only that Enascor held itself out *as Enascor*, not Brevet, but also that Iacovacci specifically stated: "*I left Brevet Capital* where I was a Co-founder and I have started my new firm Enascor Capital." MTD Ex. E (emphasis added).

### C. Brevet Fails to State a Claim for Unjust Enrichment (Count IV) Because Brevet Has Not Alleged Facts Showing that Enascor Was Enriched at Brevet's Expense

Brevet's "in the alternative" unjust enrichment claim against Enascor fails because Brevet does not plausibly allege how Enascor was enriched at Brevet's expense. An unjust enrichment claim "requires a showing of a 'specific' or 'direct' benefit that the defendant 'actually received.'" *Pauwels*, 2020 WL 818742, at *15 (quoting *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 772 (S.D.N.Y. 2015)) (dismissing unjust enrichment claim where plaintiff failed to allege how defendant was enriched at his expense). Brevet makes no allegations about what profits, if any, Enascor received as a direct result of its supposed "unlawful acts," nor any allegations about how such profits came at Brevet's expense. Indeed, the Second Amended Complaint does not contain a single allegation identifying any borrower, investor, transaction, opportunity, or funds that Brevet purportedly lost from Enascor's allegedly "unlawful acts." Brevet's bare and conclusory unjust enrichment claim warrants dismissal.

### D. The Brevet Short Duration LLCs Fail to State a Claim for Breach of Contract (Count V) For Multiple Reasons, Including Because Brevet Has Not Adequately Alleged Breach or Damages

The Brevet Short Duration LLCs' claim against Iacovacci for breach of the LLC Agreements fails both under the plain terms of the contracts and for lack of damages.

Remarkably, the Brevet Short Duration LLCs do not state what section, if any, of the LLC Agreements they contend Iacovacci has breached, nor how he has breached that section. *See* SAC ¶¶ 72-79. But they do cite Sections 7.2 and 7.3 as provisions to which Iacovacci

"agreed, among other covenants, to be bound." *Id.* ¶ 73. The Brevet Short Duration LLCs do not make out a claim for breach of either section.

Section 7.3 defines the scope of "Company Property" for purposes of "patents or similar protection," but does not impose any specific obligations on members as to the *treatment* of such "Company Property," other than to "execute, acknowledge and deliver any instrument or document reasonably necessary to enable the Company or any affiliate to exploit the Company Property or to obtain patents or similar protection with respect thereto." MTD Exs. A & B at § 7.3. There is no allegation that either of the Brevet Short Duration LLCs ever made such a request, much less that Iacovacci refused to comply. Thus, while Section 7.3 may be probative of the contracting parties' respective property interests in "writings, improvements, processes, techniques, copyrights, trademarks, tradenames, service marks, and other intangible or intellectual property rights," it does not establish any contractual duty that the Brevet Short Duration LLCs can or do allege Iacovacci breached. Section 7.3 may be relevant to determining ownership in a potential *copyright* or other intellectual property claim, but it does not give rise to a breach of contract claim here.

The Brevet Short Duration LLCs likewise do not state a proper claim under Section 7.2, which does not prohibit a Member from using "Company Property." Instead, Section 7.2, entitled "Confidential Information," provides that a Member shall "not use for his personal benefit and shall *keep secret and non-public* any and all proprietary information and knowledge concerning the Company." MTD Exs. A & B at § 7.2 (emphasis added). Thus, by its plain terms, Section 7.2 does not apply to *non-secret* information. For a person to *keep* information secret and non-public, it must first *be* secret and non-public. As discussed in connection with Brevet's misappropriation claims (Section II.A, above), Brevet has not identified information that is in

15

fact confidential in its conclusory allegations and has instead admitted that its marketing

materials were widely disclosed to "both prospective investors and borrowers" (SAC ¶ 21).

To the extent the Brevet Short Duration LLCs seek to base their claim on the data-

destruction requirements of Section 7.2, which were triggered when Iacovacci ceased to be a

Member in October 2016, such a claim not only would be untimely (*see* 10 Del. C. § 8106(a)),

but also would fail as duplicative of the Brevet Short Duration LLCs' existing counterclaims in

the separate action already pending in the New York State court. *See* Index No. 158735/2016

Dkt. 999 ¶ 76 (alleging that Iacovacci "breached the Brevet Short Duration LLC Agreements,"

including by "improperly accessing, using and removing Brevet confidential and proprietary

information and using them to compete directly with Brevet"); *id.* ¶ 21 (relying on and block-

quoting Section 7.2); *cf. Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000) (affirming

dismissal of duplicative claim); 10 Del. C. § 8106(a).

Brevet's contract claim further fails for lack of damages. Under controlling Delaware law

(which governs the LLC Agreements, *see* MTD Exs. A & B at § 9.6), a breach of contract claim

may be dismissed where "the plaintiffs' claims are 'not tied to any damages.'" *Phunware, Inc. v.

Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 627 (D. Del. 2015) (dismissing breach of contract

claim where no resulting damages were identified because contract was eligible for termination);

*see also Daniels v. Dover Downs Hotel & Casino Valet Parking*, 2017 WL 1929654, at *2 (Del.

Super. Ct. May 9, 2017) (dismissing because the "complaint fails to adequately allege one of the

essential elements of breach of contract: resultant damage to the plaintiff"). As noted, the Brevet

Short Duration LLCs have not even particularized their alleged breaches of contract, and plainly

have not identified any cognizable contract damages flowing from those unidentified purported

breaches. Where, as here, the complaint fails to allege "any facts plausibly showing damages" to

plaintiff from the defendant's actions, but instead "alleged in conclusory fashion" that plaintiff

"has been damaged," the complaint "is insufficient to state a claim." *See Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017); *see also Interim Health Care v. Fournier*, 1994 WL 89007, at *6 (Del. Ch. Feb. 28, 1994) (retaining former employer's documents was technical violation of employment agreement, but plaintiff was not entitled to relief on breach of contract claim because the breach did not cause a "cognizable injury."). Similarly, bare allegations of "speculative harm" are "not sufficient." *Kuroda v. SPJS Holdings*, 971 A.2d 872, 884 (Del. Ch. 2009). The claim thus merits dismissal on this independently sufficient ground.

### E.  Brevet's Tort Claims (Counts I-IV) Are Also Barred by the Independent Tort Doctrine

In addition to their other defects, Brevet's tort claims against Iacovacci are barred by the independent tort doctrine because Brevet's tort allegations are duplicative of its contract claim. Brevet's tort claims accuse Iacovacci of "using Brevet's proprietary and confidential documents and information without Brevet's authorization or consent." SAC ¶ 45; *see also id.* ¶¶ 55, 64. That is the *same* accusation evidently underlying the breach of contract claim, which accuses Iacovacci of breaching the LLC Agreements through "his use of Brevet's property, writings and documentation." SAC ¶ 74.

Under the independent tort doctrine, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *see also Apotex Corp. v. Hospira Healthcare India Private Ltd.*, 2019 WL 3066328 (S.D.N.Y. 2019). That is, a tort claim must be dismissed as duplicative when there is "no injury alleged" under a separate tort claim "that is not already encompassed" by the contract claim. *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 462 (N.Y. 2018).

Thus, where a plaintiff has alleged torts based on a breach of the duty to keep "confidential information confidential" and plaintiff's contract claim likewise concerns the defendant's alleged "misuse of confidential information," then "any tort claims premised on" such misuse "are duplicative of the contract claim" and should be dismissed. *Apotex*, 2019 WL 3066328, at *3-4; *see also Kumaran v. Northland Energy Trading, LLC*, 2021 WL 797113, at *12 (S.D.N.Y. 2021) ("claims for misappropriation of confidential information, unjust enrichment, and breach of the covenant of good faith and fair dealing must be dismissed where those claims are duplicative of contract claims"); *OP Sols., Inc. v. Crowell & Moring, LLP*, 900 N.Y.S.2d 48, 49 (N.Y. App. Div. 2010) (dismissing tort claims as "predicated upon precisely the same purported wrongful conduct as is the claim for breach of contract inasmuch as they all involve defendant's disclosure of plaintiff's purported proprietary and confidential information").

### F.  Brevet Fails to Differentiate Among the Plaintiff Entities, Underscoring Its Failure to Adequately Allege Ownership or Damages

In addition to the claim-specific pleading defects discussed above, the Second Amended Complaint suffers from an additional pervasive defect: Brevet fails to distinguish among the various Brevet-entity plaintiffs as needed to discern the basis for those entities' respective claims. Plaintiff defines the four plaintiff entities collectively as "Brevet" and thereafter scarcely differentiates among the four entities. Such "lumping" of all the entities together "and providing no factual basis to distinguish" them fails the "minimum standard" for notice pleading. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *see also Hu v. Windhaven Ins. Co.*, 2015 WL 12835683, at *1 (M.D. Fla. Mar. 16, 2015) (dismissing complaint that "lumps all Plaintiffs together into a single count").

Brevet's undifferentiated pleading also results in a fatal substantive defect across all Brevet's claims: Brevet never identifies which entity owns the information Enascor and

Iacovacci have allegedly copied, instead using the collective "Brevet"—as in "Brevet's property," "Brevet's proprietary and confidential documents and information," or "Brevet's services." *E.g.*, SAC ¶¶ 45, 58. This is not a mere technical quibble: as noted above (Section II.A), the "Brevet investor presentation" (SAC ¶ 30) is from Brevet Direct Lending – Intermediate Duration Fund, L.P., which is not even a party to this case. MTD Ex. I. Moreover, each of the LLC Agreements provides that particular property is the individual company's "sole property." MTD Exs. A & B at § 7.3. Failure to identify the owner of the disputed information is fatal to all the claims because they all depend on ownership of the information.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this motion be granted, and the Second Amended Complaint be dismissed with prejudice.

Dated: April 30, 2021

　　　　　　　　　　　　　　　 */s/ Jason Cyrulnik*
　　　　　　　　　　　　　　　 Jason Cyrulnik
　　　　　　　　　　　　　　　 Paul Fattaruso
　　　　　　　　　　　　　　　 Ian M. Dumain
　　　　　　　　　　　　　　　 Evelyn N. Fruchter
　　　　　　　　　　　　　　　 Mary Kate George
　　　　　　　　　　　　　　　 CYRULNIK FATTARUSO LLP
　　　　　　　　　　　　　　　 55 Broadway, Third Floor
　　　　　　　　　　　　　　　 New York, New York 10006
　　　　　　　　　　　　　　　 646 844 2466
　　　　　　　　　　　　　　　 jcyrulnik@cf-llp.com
　　　　　　　　　　　　　　　 pfattaruso@cf-llp.com
　　　　　　　　　　　　　　　 idumain@cf-llp.com
　　　　　　　　　　　　　　　 efruchter@cf-llp.com
　　　　　　　　　　　　　　　 mgeorge@cf-llp.com

　　　　　　　　　　　　　　　 *Counsel for Defendants*