**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BREVET HOLDINGS, LLC *, et al.*, <br><br>            Plaintiffs, <br><br>    v. <br><br> ENASCOR, LLC *et al.*, <br><br>            Defendants. | Case No. 1:21-cv-1540-WHP |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

Louis M. Solomon
REED SMITH, LLP
599 Lexington Avenue
New York, New York 10022
(212) 549-0400
*Attorneys for Plaintiffs*

May 20, 2021

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

STATEMENT OF FACTS ..............................................................................................................1

    A.    Parties...................................................................................................................1

    B.    Brevet's Stolen Information and Brevet's Regulatory Compliance .......................2

    C.    Defendant Iacovacci's Contracts ..........................................................................5

ARGUMENT ...................................................................................................................................6

I.     LEGAL STANDARD UNDER RULE 12(b)(6) ................................................................6

II.    THE COPYRIGHT ACT DOES NOT READ ON THE CLAIMS HERE ........................7

III.   PLAINTIFFS' COMPLAINT STATES PROPER CLAIMS FOR RELIEF ...................13

    A.    Unfair Competition & Misappropriation (Counts I, III) State Claims..................13

    B.    Unfair Competition – Palming Off (Count II) – States a Claim ...........................16

    C.    Unjust Enrichment (Count IV) States a Claim Against Enascor ..........................18

    D.    Breach of Contract (Count V) States a Claim Against Iacovacci .........................18

    E.    The Independent Tort Doctrine Does Not Apply .................................................22

    F.    Brevet Did Not Engage in Improper Lumping of Parties .....................................24

CONCLUSION...............................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Westpoint-Pepperell, Inc.,*
  945 F.2d 40 (2d Cir. 1991)......................................................................................6

*Am. Inst. of Chem. Engineers v. Reber-Friel Co.,*
  682 F.2d 382 (2d Cir. 1982)....................................................................................13

*Am. Movie Classics Co. v. Turner Entertainment Co.,*
  922 F. Supp. 926 (S.D.N.Y. 1996)..........................................................................11

*Amphenol Corp. v. Paul,*
  2013 WL 12251356 (D. Conn. Mar. 28, 2013) ......................................................24

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012)......................................................................................6

*Apotex Corp. v. Hospira Healthcare India Private Ltd,*
  2019 WL 3066328 (S.D.N.Y. July 12, 2019) .........................................................23

*Arcadia Biosciences, Inc. v. Vilmorin & Cie,*
  356 F. Supp. 3d 379 (S.D.N.Y. 2019)......................................................................16

*Arista Records LLC v. Doe,*
  604 F.3d 110 (2d Cir. 2010).................................................................................7, 15

*Astroworks, Inc. v. Astroexhibit, Inc.,*
  257 F. Supp. 2d 609 (S.D.N.Y. 2003)......................................................................16

*Atuahene v. City of Hartford,*
  10 F. App'x 33 (2d Cir. 2001) .................................................................................24

*Automated Mgmt. Sys. v. Rappaport Hertz Cherson Rosenthal, P.C.,*
  2019 WL 111042 (S.D.N.Y. Jan. 4, 2019) ..............................................................10

*BanxCorp v. Costco Wholesale Corp.,*
  723 F. Supp. 2d 596 (S.D.N.Y. 2010)......................................................................12

*Boyle v. Stephens Inc.,*
  1998 WL 690816 (S.D.N.Y. Sept. 29, 1998)...........................................................10

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,*
  373 F.3d 296 (2d Cir. 2004)..................................................................................7, 8

*Bytemark, Inc. v. Xerox Corp.,*
  342 F. Supp. 3d 496 (S.D.N.Y. 2018)......................................................................24

*Carvel Corp. v. Noonan*,
   350 F.3d 6 (2d Cir. 2003) ............................................................................22, 23

*Computer Assocs. Int'l v. Altai*,
   982 F.2d 693 (2d Cir. 1992)................................................................................9

*Craig Barna & Bronsand Music, Inc. v. Rigby*,
   2015 N.Y. Misc. LEXIS 2007 (Sup. Ct. N.Y. Cty. June 8, 2015).........................17

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000)...............................................................................20

*Daniels v. Dover Downs Hotel*,
   2017 WL 1929654 (Del. Super. Ct. May 9, 2017) ...............................................21

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
   2020 WL 4194195 (E.D.N.Y. July 20, 2020)........................................................21

*Defiance Button Machine Co. v. C & C Metal Products Corp.*,
   759 F.2d 1053 (2d Cir. 1985)..............................................................................14

*Dual Groupe, LLC v. Gans-Mex LLC*,
   932 F. Supp. 2d 569 (S.D.N.Y. 2013)...................................................................7

*Dyer v. V.P. Records Retail Outlet, Inc.*,
   2008 WL 2876494 (S.D.N.Y. July 24, 2008) ........................................................8

*Faktor v. Yahoo! Inc.*,
   2013 WL 1641180 (S.D.N.Y. Apr. 16, 2013)........................................................11

*Flaherty v. Filardi*,
   388 F. Supp. 2d 274 (S.D.N.Y. 2005)...................................................................8

*Forest Park Pictures v. Univ. Tel. Network, Inc.*,
   683 F.3d 424 (2d Cir. 2012)................................................................................12

*Freedom Mortg. Corp. v. Tschernia*,
   2021 WL 1163807 (S.D.N.Y. Mar. 26, 2021) ......................................................23

*Harbor Software v. Applied Sys.*,
   887 F. Supp. 86 (S.D.N.Y. 1995).........................................................................9

*Hu v. Windhaven Ins. Co.*,
   2015 WL 12835683 (M.D. Fla. Mar. 16, 2015) ...................................................25

*Hydrogen Master Rights, Ltd. v. Weston*,
   228 F. Supp. 3d 320 (D. Del. 2017).....................................................................21

*Iacovacci v. Brevet Holdings, LLC,*
No. 2021-01050 (1st Dep't Mar. 30, 2021) ............................................................5

*Integrative Nutrition, Inc. v. Academy of Healing Nutrition,*
476 F. Supp. 2d 291 (S.D.N.Y. 2007)................................................................10

*Interim Health Care v. Fournier,*
1994 WL 89007 (Del. Ch. Feb. 28, 1994) ...........................................................22

*ITC Ltd. v. Punchgini, Inc.,*
9 N.Y.3d 467 (2007) ......................................................................................13

*Jackson v. Roberts (In re Jackson),*
972 F.3d 25 (2d Cir. 2020)................................................................................9

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,*
327 F. Supp. 3d 606 (S.D.N.Y. 2018)................................................................12

*Jones v. E. Brooklyn Sec. Servs. Corp.,*
2012 WL 3235784 (E.D.N.Y. Aug. 7, 2012).......................................................18

*Kickflip, Inc. v. Facebook, Inc.,*
2015 WL 1517237 (D. Del. Mar. 31, 2015) ........................................................21

*Kuroda v. SPJS Holdings, L.L.C.,*
971 A.2d 872 (Del. Ch. 2009)...........................................................................22

*Manchanda v. Navient Student Loans & Educ. Credit Mgmt. Corp.,*
2020 WL 5802238 (S.D.N.Y. Sept. 29, 2020)....................................................24

*Newton Garment Carriers, Inc. v. Consolidated Carriers Corp.,*
250 A.D.2d 482 (1st Dep't 1998) .....................................................................15

*Osco Motors Co., LLC v. Marine Acquisition Corp.,*
2013 WL 6228496 (D. Del. Dec. 2, 2013),
*recommendation adopted in pertinent part,*
2014 WL 207106, (D. Del. Jan. 16, 2014).........................................................21

*Pa. Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.,*
939 F. Supp. 2d 445 (S.D.N.Y. 2013)................................................................6

*Padilla v. Yeshiva Univ.,*
691 F. App'x 53 (2d Cir. 2017) .........................................................................6

*Pauwels v. Deloitte,*
2020 WL 818742 (S.D.N.Y. Feb. 19, 2020)......................................................18

*Phunware, Inc. v. Excelmind Group Limited*,
  117 F. Supp. 3d 613 (D. Del. 2015)..........................................................................21

*Quadrille Wallpapers & Fabric, Inc. v. Pucci*,
  2011 WL 3794238 (N.D.N.Y. Aug. 24, 2011) .......................................................10

*R.F.M.A.S., Inc. v. So*,
  619 F. Supp. 2d 39 (S.D.N.Y. 2009).........................................................................8

*Rockwell Automation, Inc. v. Kall*,
  2004 WL 2965427 (Del. Ch. Dec. 15, 2004)..........................................................20

*Schafer v. Direct Energy Servs., LLC*,
  845 F. App'x 81, 2021 WL 1621595 (2d Cir. Apr. 27, 2021)..................................7

*SEC v. Sugarman*,
  2020 WL 5819848 (S.D.N.Y. Sep. 30, 2020)...........................................................6

*Shepard v. European Pressphoto Agency*,
  291 F. Supp. 3d 465 (S.D.N.Y. 2017)...............................................................11, 12

*Starr v. Sony BMG Music Entm't*,
  592 F.3d 314 (2d Cir. 2010).......................................................................................6

*Tarazi v. Truehope Inc.*,
  2017 WL 5957665 (S.D.N.Y. July 28, 2017),
   *recommendation adopted*, 2017 WL 5957745 (S.D.N.Y. Nov. 30, 2017) ............11

*VLIW Tech., L.L.C. v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003) .........................................................................................21

*Weyerhaeuser Co. v. Domtar Corp.*,
  61 F. Supp. 3d 445 (D. Del. 2014).............................................................................21

**Statutes**

10 Del. C. § 8106(a).........................................................................................................20

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................................24

Fed. R. Civ. P. 12(b)(6)...............................................................................................6-7

Plaintiffs (collectively "Brevet") respectfully submit this memorandum in opposition to the motion by Defendants Enascor, LLC and Paul Iacovacci (collectively, "Defendants") to dismiss Plaintiffs' Second Amended Complaint ("Complaint"; cited as "¶").

## PRELIMINARY STATEMENT

This matter involves corporate identity theft.  Brevet filed this action to stop Defendants' wholesale misappropriation of Brevet's proprietary information, experience and the deals that are unique to Brevet.  Defendants have presented themselves both as a continuation of Brevet and as being the source of what are in fact Brevet's deals and experience.  Defendants' motion to dismiss improperly ignores the applicable standard and posits facts contrary to Brevet's well-pleaded allegations, including those concerning the proprietary and confidential nature of the information at issue.  Defendants further ignore that Brevet is alleging much more than the mere copying of words on a page – Brevet seeks redress for Defendants' improper corporate theft of its proprietary information.  When the proper legal standards are applied to Brevet's well-pleaded allegations, Defendants' motion to dismiss should be denied.

## STATEMENT OF FACTS

The facts set forth below are taken from the allegations of the Complaint.  Defendants have cited documents referenced in the Complaint, some of which Brevet is seeking to seal; those documents are cited herein by their ECF number.

### A.    Parties

Defendant Paul Iacovacci ("Iacovacci") was a Managing Director of Brevet Holdings and a Member of Brevet Short Duration Holdings, LLC and Brevet Short Duration Partners, LLC (collectively, the "Short Duration LLCs") until he was terminated for cause, including active disloyalty, in October 2016.  Brevet Capital Management, LLC is a registered investment

adviser.  Iacovacci recently launched a new firm, Defendant Enascor LLC ("Enascor").

Iacovacci has averred that he is Enascor's only member, and has stated that Enascor intends to

compete against Brevet in the markets for investors and borrowers (¶¶ 1, 10-11, 18).

      **B.**     **Brevet's Stolen Information and Brevet's Regulatory Compliance**

Brevet brought this action to seek redress for Defendants' theft and misappropriation of

Brevet's ideas, hard work, successes – its very identity.  In the commercial, competitive context,

few acts are as damaging to Brevet and to investors and borrowers as Defendants' fraudulent

palming off of Brevet's skill, foresight, and industry knowledge (¶¶ 4, 5).

Brevet first became aware of Defendants' theft and misuse of Brevet's proprietary and

confidential information in December 2020, and has since learned of additional stolen

information that Defendants have been using.  Brevet is still learning the scope of Defendants'

thefts (¶ 14).  Defendants' actions are exacerbated because of the regulated environment in

which Brevet functions (*see* ¶¶ 15-18).  The Brevet information that Plaintiffs are currently

aware that Defendants have misappropriated (collectively, "Brevet Business Information"), and

the related regulatory concerns, are discussed below.

Example Transactions.  Defendants circulated at least one document listing proprietary

and confidential information concerning certain transactions engaged in by Brevet ("Example

Transactions Document," ECF 44-7).  The Example Transactions Document consists entirely of

specifically identifiable transactions engaged in by Brevet.  The stolen information includes

metrics such as percentages and rates of return, fees and coupons, often to a tenth of a decimal

place, information that Brevet keeps strictly confidential.  The information in the Example

Transactions Document is contained in several Brevet proprietary and confidential documents,

which Iacovacci emailed himself while he was at Brevet (¶¶ 16, 31).  Records of Brevet's prior

and ongoing transactions, including their related proprietary and confidential metrics, constitute core proprietary and confidential property and are of irreplaceable value to Brevet (¶ 3).

Other than as one of several member of Brevet's investment committee, and involvement in sourcing only some of the transactions, Iacovacci played no part in bringing the transactions in the Example Transactions Document to fruition or managing them.  He was not involved in underwriting, structuring, documenting, servicing, risk managing, collecting, or working-out the transactions.  Other Brevet principals and employees performed those essential tasks (¶ 32). Iacovacci's limited role in the deals is not disclosed in the document or the one cover email Brevet has seen, which states it includes "our strategy, past deals" (¶ 16; ECF 44-7; Def. Br. 13).

Brevet Capital Management, LLC is a registered investment adviser, with compliance and reporting obligations under the SEC-administered Investment Advisers Act (¶ 18).  The SEC also enforces rules regarding the portability of track record information and its use in marketing materials.  For example, a member of a team who has moved to a new company generally cannot tout the track record of the member's prior employer unless other investment decision makers with whom the member had worked at the prior employer moved with the member (¶ 17).  In this environment, by failing to state Iacovacci's limited role in each transaction contained in the Example Transactions Document, Defendants make it appear that those transactions are ones for which Iacovacci was largely or primarily responsible, and thus misrepresent the source and nature of the services Defendants had provided and would provide (¶¶ 32-33).

The remainder of the documents involve additional regulatory concerns. Communications with prospective investors are specifically regulated.  Brevet approaches only "qualified" investors, prohibiting mass marketing to unknown – and potentially unqualified – persons. Accordingly, the wording and content of communications to investors is vetted before being

approved for marketing purposes, typically being reviewed by legal and/or compliance advisers before it is approved.  A similar process is used for communications to prospective borrowers, and thus covers the Investor Presentation, Communications and Firm Overview (¶¶ 18-20).

Investor Presentation.  Defendants created and have circulated versions of an investor presentation that misappropriates, at least in part, the form and content of one or more proprietary and confidential Brevet investor presentations that contain internal confidentiality warnings (ECF 44-6; *see also* ECF 44-4, 44-5).  Defendant Iacovacci emailed himself one or more versions of Brevet's investor presentation while he was at Brevet. (¶ 30).  The Brevet presentation indicates that Plaintiff Brevet Capital Management is the manager of the fund that is the subject of the presentation (ECF 44-6 at 25 of 26 ("Disclaimer")).

Communications.  Among Brevet's confidential and proprietary documents are sourcing presentations and deal sourcing templates for use with targeted recipients, including both prospective investors and borrowers (the "Communications").  The Communications are not intended to be shared with competitors, are not public, and are not on Brevet's website (¶ 21).  Whenever Brevet emails them outside of Brevet, the practice and protocol are that the Communications carry with them a "confidentiality" designation that provides, in substance, that the Communications are intended only for the recipient(s) listed; that their contents are confidential; and that it is strictly prohibited to use or copy the Communications (¶ 24).  Defendants' versions identify "our latest borrowers" using Brevet's borrowers.  Defendants' versions identify "our recent experience" using Brevet's experience (¶ 15; ECF 44-1, 44-2).

Firm Overview.  Brevet's "Firm Overview" is a one-page proprietary document subject to the same scrutiny, creation, restrictions on dissemination, and approval process as the Communications (¶¶ 18-21).  Defendants adopted the substantive elements of Brevet's Firm

Overview wholesale – the virtual identity between the documents underscores that Defendants used Brevet's document, which they should not have possessed.  Iacovacci emailed to himself at least one copy of Brevet's Firm Overview while at Brevet (¶ 28; ECF 44-3).

Plaintiffs note that all these documents are currently under seal in state court, and they have made a sealing application to this Court (ECF 42-44, 48).  Defendants' recitation of the state court proceedings (Def. Br. 6) omits that the trial court denied sealing solely on procedural grounds, rather than an examination of the documents, that Brevet's appeal of that decision is currently pending before the First Department, and that the First Department has provisionally stayed the trial court's decision so that the documents are currently still under seal in the state court.  *See Iacovacci v. Brevet Holdings, LLC,* No. 2021-01050 (1st Dep't Mar. 30, 2021).

### C.      Defendant Iacovacci's Contracts

Defendant Iacovacci is prohibited by contract from having access to or using Brevet's proprietary and confidential documents.  Iacovacci was a Member of the Short Duration LLCs from January 21, 2009 to October 14, 2016.  As a member, he was bound by the Short Duration LLCs' LLC Agreements ("LLC Agreements"), which have continuing obligations (¶¶ 34-35).

Among other provisions, the LLC Agreements impose a duty of confidentiality that continues even after Iacovacci was no longer affiliated with Brevet (¶ 36).  Specifically, Section 7.2 of the LLC Agreements, entitled "Confidential Information," provides (emphasis added):

> Section 7.2 <u>Confidential Information</u>.  During the time that a Member owns his Interest in the Company ***and at all times thereafter***, a Member shall (i) not use for his personal benefit and shall keep secret and non-public ***any and all proprietary information and knowledge concerning the Company and any of its affiliates, including, without limitation, the know-how, trade secrets and any information relating to the trading systems, processes, services and clients and other business and financial affairs of the Company and any of its affiliates*** (collectively, the "Confidential Information") to which he has had or may have access, and (ii) ***shall not disclose such Confidential Information to any person*** other than [exceptions not applicable here].  ***Upon ceasing to be a Member*** for any reason, the Member ***shall (x) deliver to the Company all documents, papers and records, and (y) destroy all of the***

***electronic media, in his possession or subject to his control that (i) belongs to the Company***, or (ii) contains or reflects any information concerning the Company and its affiliates.  Upon request of the Company, the former Member shall provide the Company with confirmation reasonably satisfactory to the Managing Member of the destruction of the electronic media referred to in the immediately preceding sentence.

The Brevet Business Information are documents that belong to the Short Duration LLCs and/or contain or reflect information concerning Brevet.  Iacovacci and his entity Enascor are now using Brevet's own information, which Iacovacci wrongly misappropriated and maintained, to compete directly against Brevet (¶ 37).

Based on these well-pleaded facts and applicable law, the motion should be denied.

## ARGUMENT

## I.   LEGAL STANDARD UNDER RULE 12(b)(6)

"On a motion to dismiss, a court accepts all facts alleged in the complaint as true and construes all reasonable inferences in a plaintiff's favor."  *SEC v. Sugarman*, 2020 WL 5819848, *4 (S.D.N.Y. Sep. 30, 2020) (Pauley, J.)  A complaint needs only "enough facts 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face'".  *Padilla v. Yeshiva Univ.*, 691 F. App'x 53, 55 (2d Cir. 2017) (*citing Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).  The "plausibility standard is lower than a probability standard, and there may therefore be more than one plausible interpretation".  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 189-90 (2d Cir. 2012).

The court's consideration "'is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'"  *Pa. Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.,* 939 F. Supp. 2d 445, 450 (S.D.N.Y. 2013) (Pauley J.) (*citing Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).  "The task of the court in ruling on a Rule

12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 2021 WL 1621595, *1 (2d Cir. Apr. 27, 2021) (citations omitted); *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 572 (S.D.N.Y. 2013) ("Defendants dispute many of the complaint's factual allegations, which the court cannot adjudicate at the motion to dismiss stage.").

The law is also clear that Brevet need not plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records LLC v. Doe*, 604 F.3d 110, 120-21 (2d Cir. 2010). Accordingly, there is no need to scrutinize all of the documents thus far identified – if any of them meet the relevant standard, that is sufficient to support the claims. For purposes of opposing Defendants' motion, the Example Transaction Document is emblematic of Brevet's claims in this action and illustrates the usurpation of Brevet's borrowers, transactions and experiences that is apparent in all examples uncovered by Brevet to date.

## II.    THE COPYRIGHT ACT DOES NOT READ ON THE CLAIMS HERE

Beyond their efforts to have the Court disregard Brevet's well-pleaded allegations in favor of their own contrary assertions (discussed in more detail below), Defendants would have this Court dismiss all of Brevet's claims on the grounds that they are all preempted by the Copyright Act. That argument fails.

Copyright preemption only applies if

(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106.

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (cited at Def. Br. 7). Neither of these two requirements is met here.

With respect to the first element, the subject matter to which the claims are being applied, Defendants stole Brevet's deals, Brevet's borrowers, Brevet's experience.  That information falls outside the subject matter of the Copyright Act.  *R.F.M.A.S., Inc. v. So*, 619 F. Supp. 2d 39, 87 (S.D.N.Y. 2009) (no preemption for misappropriation and unjust enrichment claims based on "types of information [that] are not covered by copyright law" such as "sales data, marketing, customer preferences and distributor information"); *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2005) (no preemption for unfair competition and unjust enrichment claims asserted in connection with plaintiff's "confidential and proprietary original ideas and concepts" because they "fall outside the range of rights protected by the Copyright Act").

Even if Plaintiffs' claims satisfied the subject matter requirement, however, they cannot meet the general scope requirement.  That prong requires that

> the state law claim must involve acts of reproduction, adaptation, performance, distribution or display.  Further, the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim.  To determine whether a claim is qualitatively different, we look at "what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced."

*Briarpatch*, 373 F.3d at 305-06 (citations omitted).  This Court has held that claims should only be dismissed based on Copyright Act preemption if they are "***grounded solely in the copying*** of plaintiff's protected expression".  *Dyer v. V.P. Records Retail Outlet, Inc*., 2008 WL 2876494, *5 (S.D.N.Y. July 24, 2008) (Pauley, J.) (emphasis added) (cited at Def. Br. 9).  Not surprisingly, most of the cases Defendants cite involve subject matter typically associated with copyright. *E.g., Briarpatch*, 373 F.3d at 299 ("this appeal involves the rights to films and plays"); *Dyer*, 2008 WL 2876494, *1 ("claims arise from Defendants' alleged production, sale and use of works featuring a Jamaican reggae artist").

The courts do not preempt "breach of confidentiality, breach of trust, unfair competition, and trade secret misappropriation." *Harbor Software v. Applied Sys.*, 887 F. Supp. 86, 89 (S.D.N.Y. 1995) (unfair competition and misappropriation claims not preempted).  The Second Circuit has recognized that "'claims alleging breaches of fiduciary duty, 'unfair competition claims based upon breaches of confidential relationships,' and trade secret claims — survive preemption when such claims include a sufficiently significant 'extra element' that 'qualitatively distinguishes such . . . [claims] from claims for copyright infringement.'" *Jackson v. Roberts (In re Jackson)*, 972 F.3d 25, 44-45 (2d Cir. 2020) (Conn. right of publicity claim preempted) (*quoting Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 717 (2d Cir. 1992)); *Computer Assocs*, 982 F.2d at 719 ("where the use of copyrighted expression is simultaneously the violation of a duty of confidentiality established by state law, that extra element renders the state right qualitatively distinct from the federal right, thereby foreclosing preemption under section 301").

Brevet's claims are based on Defendants' misappropriation of the substance of Brevet's proprietary information, not the words themselves.  For example, in the Example Transaction Document, Defendants are claiming experience and deals – actual transactions – that were done by Brevet.  Defendants could change their description of those deals – they often didn't – but that would not avoid liability here.  Brevet is not seeking loss of royalties for the use of its written work – it is seeking redress for Defendants' wrongful actions in usurping Brevet's proprietary information, including Brevet's actual experience and transactions, and unfairly competing against Brevet with that information.

None of the claims in the Complaint is "grounded solely" in rights related to the "reproduction, adaptation, performance, distribution or display" of a document that describes Brevet's transactions.  Rather, the claims are premised on Defendants' wrongful

misappropriation of Brevet's deals and their metrics, including their rates of return – all information that Brevet holds in confidence, and all information that Defendants obtained through breach of confidence.  There is no one "work" of authorship that Brevet is protecting; it is protecting its identity.

In addition, the specific claims asserted by Brevet do not warrant preemption:

Unfair competition/misappropriation (Counts I, III).  Defendants cite no case preempting a claim for misappropriation of goodwill (¶¶ 46-47), so that part of Count I cannot be dismissed (*see also infra* p. 13).  As for the rest, Plaintiffs' claims are premised on wrongful access to Brevet's information and breach of confidentiality, and thus are not preempted.  *Automated Mgmt. Sys. v. Rappaport Hertz Cherson Rosenthal, P.C.*, 2019 WL 111042, *3 (S.D.N.Y. Jan. 4, 2019) (misappropriation premised on access to software in violation of contract not preempted); *Quadrille Wallpapers & Fabric, Inc. v. Pucci*, 2011 WL 3794238, *5-6 (N.D.N.Y. Aug. 24, 2011) (unfair competition and misappropriation claims premised on "breach of a duty of confidentiality" not preempted).

The cases Defendants posit are factually similar to Brevet's claims (Def. Br. 8) all involve information available to public and/or in the public domain.  *Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F. Supp. 2d 291, 296 (S.D.N.Y. 2007) ("websites and brochures"); *Boyle v. Stephens Inc.,* 1998 WL 690816, *2, 5-6 (S.D.N.Y. Sept. 29, 1998) (summary judgment granting preemption of unjust enrichment claim where plaintiff held copyright in executive summary and marketing materials, "never asked for a promise of confidentiality," and ideas embodied in works "remain part of the public domain").  The one case that Defendants argue applied to confidential information found instead that the information was not confidential because the plaintiff had told the recipients to "'feel free to pass [it] along'".

10

*Faktor v. Yahoo! Inc.*, 2013 WL 1641180, *3 (S.D.N.Y. Apr. 16, 2013) (unjust enrichment claim over video series treatment preempted). Here, there is no allegation that any of the information was available to the public, in the public domain or was not proprietary and confidential.

Unfair competition – passing off and reverse passing off (Count II). Defendants cite no cases preempting unfair competition grounded in passing off, which the Complaint alleges (¶ 58; *see infra* pp. 16-17). Indeed, even Defendants' authorities state that such claims are not preempted. *E.g., Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465, 468, 475 (S.D.N.Y. 2017); *Am. Movie Classics Co. v. Turner Entertainment Co.*, 922 F. Supp. 926, 933 (S.D.N.Y. 1996) (both cited at Def. Br. 9). Defendants' cases solely involve reverse palming off unfair competition (which the Complaint also pleads). These cases are distinguishable (Def. Br. 9), because Brevet's claim is not grounded "solely" in copying. Rather, Brevet asserts that Defendants are claiming Brevet's deals, borrowers, and experience as their own. Any copying is simply part of the evidence that shows the transactions at issue are in fact Brevet's, and came from documents that Defendants wrongly possessed, but the copying is not the claim.

Unjust enrichment (Count IV). Unjust enrichment survives preemption when it rests on facts not covered by the Copyright Act. *See Tarazi v. Truehope Inc.*, 2017 WL 5957665, *16 (S.D.N.Y. July 28, 2017) (unjust enrichment claim premised on "allegations that Q Sciences used Ms. Tarazi's marketing and business strategies" is "not preempted because using a business strategy, by itself, does not involve acts of distribution, reproduction, adaption, performance, or display"), *recommendation adopted*, 2017 WL 5957745 (S.D.N.Y. Nov. 30, 2017). Here, the unjust enrichment claim arises from Defendants' misuse of misappropriated proprietary information – not simply the copying of text. For the same reasons set forth above, Brevet's unjust enrichment claim is not preempted.

Breach of contract.  Brevet's breach of contract is premised on Iacovacci's breach of his duty of confidentiality (¶¶ 36, 73-74), an "extra element" that distinguishes this claim from copyright claims (*see supra* p. 9).  The one case that Defendants cite to support preemption of Brevet's breach of contract action is inapposite, as the contract at issue in that case was a licensing agreement permitting the licensee to use the licensor's copyrighted courtroom sketches for one day.  The breach alleged use after that day, in violation of the licensor's copyright rights, and was thus preempted.  *Shepard*, 291 F. Supp. 3d at 468, 475 (S.D.N.Y. 2017) ("[Defendant's] promise not to infringe the Shepards' copyright is the same as its duty to comply with the copyright law, and is therefore preempted by it").  Even some "license agreements . . . are not preempted".  *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 617 (S.D.N.Y. 2010).

The contract at issue here is not a licensing agreement.  It is a comprehensive LLC Agreement setting forth the rights and duties of the LLC members.  Among those duties is the obligation to maintain Brevet's proprietary information in confidence.  That obligation is broader than any right under the Copyright Act.  Even copyright-related contracts – which the contract here is not – can survive preemption claims.  *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 625 (S.D.N.Y. 2018) (Pauley, J.) (claims for breach of settlement agreement arising out of copyright action not preempted; agreement contained rights that "are qualitatively different from rights under the Copyright Act"); *Forest Park Pictures v. Univ. Tel. Network, Inc.*, 683 F.3d 424, 432-33 (2d Cir. 2012) ("alleged contract does not simply require USA Network to honor Forest Park's exclusive rights under the Copyright Act" but "requires USA Network to pay for the use of Forest Park's ideas").  Brevet's claims are not preempted.

### III.   PLAINTIFFS' COMPLAINT STATES PROPER CLAIMS FOR RELIEF

Beyond their preemption argument, Defendants take issue with Brevet's claims largely by ignoring and contravening the well-pleaded allegations of the Complaint.  Each of Defendants' arguments should be rejected.

#### A.   Unfair Competition & Misappropriation (Counts I, III) State Claims

Defendants attack Plaintiffs' claims for unfair competition (based on misappropriation) and misappropriation (Counts I & III), primarily by asking this Court to disregard the Complaint and instead accept as fact attorney colloquy regarding the alleged public nature of the information at issue.  Defendants' attempt to rewrite Brevet's well-pleaded allegations should be rejected.  Plaintiffs' misappropriation claims stand.

As a threshold matter, Defendants do not purport to challenge that portion of Count I that asserts misappropriation of Plaintiffs' goodwill (¶¶ 46-47), for which no showing of confidentiality is required.  The New York Court of Appeals has held that "when a business, through renown in New York, possesses goodwill constituting property or a commercial advantage in this state, that goodwill is protected from misappropriation under New York unfair competition law."  *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 479 (2007).  The Complaint alleges such misappropriation, including by Defendants' use of the Example Transactions Document, which contains rates of return among other metrics, "and any other which associates Defendants with Brevet's reputation derived from its successful transactions" (¶ 47).

Defendants' attack on Brevet's misappropriation claims rests largely on the assertion that the documents at issue constitute "publicly disseminated information" (Def. Br. 10).  In the cases they cite, the plaintiffs "had made no allegation and submitted no proof [on summary judgment] that [defendant] . . . has in its possession any confidential information or information acquired at substantial expense which is not also available to the general public".  *Am. Inst. of Chem.*

*Engineers v. Reber-Friel Co*., 682 F.2d 382, 388 (2d Cir. 1982); *see also Defiance Button Machine Co. v. C & C Metal Products Corp*., 759 F.2d 1053, 1063 (2d Cir. 1985) (customer list was on computer sold at auction) (both cited at Def. Br. 10).  Here, the Complaint alleges the exact opposite – that none of the information at issue was available to the public, and that the information was proprietary and confidential.

The Complaint expressly alleges that the Example Transactions Document contains information from "internal proprietary and confidential documents that [Brevet] uses for its business" such as "records of its prior and ongoing transactions, including the proprietary and confidential metrics concerning those transactions" (¶¶ 3, 16, 31).  There is no allegation that this document was disseminated outside of Brevet.  As for documents that were disseminated outside of Brevet, the Investor Presentation has "internal confidentiality warnings" (¶ 30; ECF 44-6 at 25 of 26), and the Communications and Firm Overview when sent from Brevet "carr[ied] with them a 'confidentiality' designation that provides, in substance, that the Communications are intended only for the recipient(s) listed; that their contents are confidential; and that it is strictly prohibited to use or copy the Communications" (¶ 24).  Moreover, "Brevet approaches only 'qualified' investors, prohibiting mass marketing to unknown – and potentially unqualified – persons" (¶ 20).  The Complaint expressly alleges that those documents "are not intended to be shared with competitors.  The Communications are not public; nor are they on Brevet's website" (¶ 21).  These are hardly "conclusory" allegations, and under the applicable standard, must be credited.

Defendants urge this Court "not [to] accept" Plaintiffs' pleading regarding confidentiality (Def. Br. 11).  But the state case they cite in support expressly relied on the complaint itself in determining there was no confidentiality:  "The claim that the customer list is a trade secret is ***contradicted by the complaint itself***, which indicates that the information obtained . . . was not

14

private, but rather in the public domain". *Newton Garment Carriers, Inc. v. Consolidated Carriers Corp.*, 250 A.D.2d 482, 482 (1st Dep't 1998) (emphasis added).

The only way Defendants can support their argument is to make up facts and cite to irrelevancies. As noted earlier, Plaintiffs need not plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records*, 604 F.3d at 120-121. Thus, if any of the documents thus far identified meet the standard, that is sufficient. The Example Transactions Document clearly meets the standard. Defendants claim "it is just Iacovacci describing his background" (Def. Br. 13). First, even if true, that would be irrelevant to Plaintiffs' claim that the information is confidential. Second, the Complaint expressly pleads that Iacovacci had little to do with these transactions, does not satisfy the requirements for using such track record information, and is misrepresenting the source and nature of the Defendants' services (¶¶ 17, 32-33, 58). Third, Defendants offer no argument addressing the allegations that they circulated this confidential information without authorization.

Should the Court review additional evidence, Brevet's misappropriation claims concerning proprietary and confidential information (rather than goodwill) still stand. On the Investor Presentation, Defendants claim lack of standing (Def. Br. 12), without acknowledging that the Brevet presentation indicates that Plaintiff Brevet Capital Management is the manager of the fund at issue (ECF 44-6 at 25 of 26 ("Disclaimer")). Although not necessary for this claim, Plaintiffs note that Iacovacci's contractual confidentiality duties extend to "the Company and any of its affiliates" (¶ 36, quoting LLC Agreements § 7.2). Defendants then suggest that any misappropriation was minor, without acknowledging that they should not have used Brevet's document in any way. For the Communications and Firm Overview, Defendants simply make up facts. They assert these documents were designed for the general public, imply that the

information is on Brevet's website, and claim that they were widely disseminated to thousands of recipients (Def. Br. 12; Def. Br. 4).  Defendants "may not rewrite [Brevet's] Complaint and then attempt to discredit that fictitious pleading; they 'must take the Complaint[] as [it is] written.'" *Astroworks, Inc. v. Astroexhibit, Inc*., 257 F. Supp. 2d 609, 620 (S.D.N.Y. 2003).

Finally, Defendants assert in passing a purported failure to plead harm (Def. Br. 13), but the harm and confusion caused by Defendants' misappropriation is properly alleged.  Defendants identified to recipients "a few examples of ***our** latest borrowers*" using Brevet's borrowers. Defendants identified to recipients "***our** recent experience*" using Brevet's experience (¶ 15; ECF 44-1, -2).  Defendants circulated the Example Transaction Document containing Brevet's deals under an email that stated it included "***our** strategy, past deals*" (ECF 44-7; Def. Br. 13). The Complaint alleges the confusion engendered by Defendants' improperly claiming credit for Brevet's track record information in a regulated environment where such information can generally only be cited when all investment decision makers have moved to a new employer, which is not the case here – and particularly where Iacovacci had only a limited role with respect to the transactions (¶¶ 17, 32-33, 58).  Brevet is not merely relying on discovery to support this factor, and Defendants' case citation is inapposite.  *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 398 (S.D.N.Y. 2019) (cited at Def. Br. 13) (statute of limitations barred breach of contract claim; party could not avoid statute "simply by speculating as to what subsequent discovery might turn up").  The misappropriation counts state claims.

### B.        Unfair Competition – Palming Off (Count II) – States a Claim

Defendants seek dismissal of Brevet's palming off claim by wrongly asserting that the Complaint does not allege that Defendants attempted to induce the use of "Enascor's services by making them believe they were getting Brevet's services" (Def. Br. 13).  The Complaint does exactly that – and more.  Complaint ¶ 58 alleges:

> Defendants are also holding themselves out as providing Brevet's services. For example, given a regulated environment where the portability of track record information is and is understood to be constrained, by improperly claiming complete credit for Brevet's transactions while offering similar services, Defendants are inducing recipients to use Defendants' services by making them believe they are getting Brevet's services.

*See also* ¶ 17 (citing SEC rules providing that a "member of a team who has moved to a new company generally cannot tout the track record of the member's prior employer unless other investment decision makers with whom the member had worked at the prior employer moved with the member").

With respect to the Example Transactions Document, the Complaint makes clear that Iacovacci had at best a limited role with respect to those transactions and that "by failing to state Iacovacci's role, if any, in each transaction, Defendants make it appear that these are transactions for which Iacovacci was largely or primarily responsible" (¶ 32), "misrepresent[ing] the source and nature of the services Defendants had provided and would provide" (¶ 33).  Thus, the Complaint plausibly alleges that, in this regulated environment, Defendants' claiming of complete credit for Brevet transactions is improper passing off, such that recipients would be induced to believe they were getting Brevet's services – the services that produced the Example Transactions and their rates of return.

The Complaint also alleges reverse passing off, which Plaintiffs fail to challenge.  *Cf. Craig Barna & Bronsand Music, Inc. v. Rigby*, 2015 N.Y. Misc. LEXIS 2007, *17 (Sup. Ct. N.Y. Cty. June 8, 2015) (granting leave to plead reverse palming off claim under NY unfair competition law).  Among other allegations, the Complaint alleges that "Enascor identified 'our latest borrowers' using Brevet's borrowers" and "Enascor identified 'our recent experience' using Brevet's experience (Complaint ¶ 15; *see also id.* ¶¶ 55-57 ("passing off of Brevet's business, experience, and borrowers as Enascor's")).  This Count should be sustained.

### C.      Unjust Enrichment (Count IV) States a Claim Against Enascor

Defendants attack Brevet's unjust enrichment claim – pleaded in the alternative against

Enascor only – on the sole basis that Brevet purportedly failed to assert "allegations about what

profits, if any Enascor received as a direct result of its supposed 'unlawful acts'" at Brevet's

expense (Def. Br. 14).  The case Defendants rely on involved an allegation that the defendant

had not paid the plaintiff's invoices in full, and this failure to allege "how much money Plaintiff

was not paid" warranted dismissal of the unjust enrichment claim there.  *Pauwels v. Deloitte*,

2020 WL 818742, *15 (S.D.N.Y. Feb. 19, 2020) (cited at Def. Br. 14).

By contrast, facts concerning Enascor's profits and transactions are "peculiarly within the

knowledge of the defendants" and thus need not be pleaded to survive a motion to dismiss.  *See*

*Jones v. E. Brooklyn Sec. Servs. Corp*., 2012 WL 3235784, *6-7 (E.D.N.Y. Aug. 7, 2012)

(declining to dismiss breach of contract and unjust enrichment claims predicated on unspecified

"public works contracts that the defendants allegedly entered into" because that information was

"peculiarly within" defendants' knowledge).

### D.      Breach of Contract (Count V) States a Claim Against Iacovacci

The Complaint clearly states breach of contract claims against Iacovacci under the LLC

Agreements, specifically §§ 7.2, 7.3 and the implied covenant of good faith and fair dealing.

Defendants' argument that the complaint does not cite the provisions at issue (Def. Br. 14) is

disingenuous:  ¶ 72 incorporates all other paragraphs; ¶¶ 73-74 allege breach of §§ 7.2-7.3; and

¶ 75 alleges breach of the covenant of good faith and fair dealing, a breach that Defendants

ignore.

As set forth above, § 7.2 of the LLC Agreements provides in part as follows:

During the time that a Member owns his Interest in the Company and at all times
thereafter, a Member shall (i) not use for his personal benefit and shall keep secret and
non-public any and all proprietary information and knowledge concerning the

Company and any of its affiliates, including, without limitation, the know-how, trade secrets and any information relating to the trading systems, processes, services and clients and other business and financial affairs of the Company and any of its affiliates (collectively, the "Confidential Information") to which he has had or may have access, and (ii) shall not disclose such Confidential Information to any person . . . .

This section applies to "any and all proprietary information and knowledge concerning the Company and any of its affiliates", period.  The Complaint also discusses § 7.3, which defines "Company Property" broadly as all tangible and intangible property created by Brevet or its members, to inform part of the scope of information covered by the broader § 7.2.

With respect to that broad § 7.2 information, the Member has several obligations, including the obligation "not [to] use for his personal benefit" such information.  The Complaint alleges breach of this obligation (*e.g*., ¶¶ 32, 74).  Another obligation is to "keep secret and non-public" this information, as well as an obligation "not [to] disclose" such information.  The Complaint alleges breach of these obligations, including through dissemination (*e.g*., ¶¶ 30, 31, 38; *see also* ECF 44-3, 44-7 (showing dissemination)).

Defendants attempt to imbue the word "keep" with weight it cannot carry, by asserting that § 7.2 applies only to information that ***Defendants*** deem to be "confidential" and "non-public" (Def. Br. 15).  That is not what § 7.2 provides.  Even were Defendants correct, however, that the information must be confidential, the Complaint alleges that it is.  Defendants do not and cannot assert that Brevet disseminated the information in the Example Transaction Document publicly.  Defendants further ignore that the Investor Presentation contains an internal confidentiality designation (¶ 30).  Instead, Defendants focus solely on the Communications (Def. Br. 16, citing ¶ 21), while ignoring completely the well-pleaded allegation in the Complaint that "[t]he Communications, which have evolved over time, are not intended to be shared with competitors.  The Communications are not public; nor are they on Brevet's website" (¶ 21), as well as the fact that even the Communications were sent with confidentiality designations (¶ 24;

*see also* ¶ 44 ("Any distribution of the Brevet Business Information at issue by Brevet included reasonable and appropriate steps to restrict reproduction or further distribution and to maintain appropriate confidentiality").  These allegations clearly state a breach of contract claim.

Defendants' additional arguments are easily dismissed.  There is no statute of limitations argument, because Iacovacci's obligations are ongoing and his use and dissemination of Brevet's information occurred well within any applicable limitations period (Def. Br. 16, citing 10 Del. C. § 8106(a)).  Defendants' argument that the breach of contract claim is duplicative of the state law action (Def. Br. 16) cites an inapposite case that deals only with duplicative "federal court" actions.  *Curtis v. Citibank*, N.A., 226 F.3d 133, 138 (2d Cir. 2000).  Defendants further fail to inform this Court – to which they removed this action – that they argued in opposition to Plaintiffs' motion to amend their state action pleading that the "[state] Court should deny this motion on its face because adding Brevet's new Enascor-based allegations to this action would improperly enable Brevet to pursue the same claims in two separate cases" (*Iacovacci v. Brevet*, No. 158735/2016, NYSCEF 1237 at 4).  Plaintiffs have appealed the denial of that motion to amend, but Defendants' attempt to shut Plaintiffs out of all available forums should be rejected.

Defendants' argument that the Complaint fails to plead damages is similarly unfounded.  First, the Complaint seeks equitable relief from the harm Iacovacci caused (*e.g.*, ¶ 79).  *See Rockwell Automation, Inc. v. Kall*, 2004 WL 2965427, *3-4 (Del. Ch. Dec. 15, 2004) (granting summary judgment on breach of contract claim regarding confidential documents and ordering their return).  Second, the Complaint alleges Brevet's "loss of the full value of their contracts with" Iacovacci (¶ 75), as well as loss of goodwill (¶¶ 46-47), and references Brevet's expenditure of "time, skill, and money in developing its proprietary and confidential business materials" (¶¶ 44, 54).  Brevet does not yet know the full scope of the damages arising from

Iacovacci's breach.  Courts routinely uphold claims pleading damages from breach of contract, including breach of confidentiality provisions, alleging, *e.g.*, "'significant monetary damages, plus the loss of additional sales not yet known which discovery will reveal.'"  *Osco Motors Co., LLC v. Marine Acquisition Corp.*, 2013 WL 6228496, *8 (D. Del. Dec. 2, 2013) (upholding breach of contract claim), *recommendation adopted in pertinent part*, 2014 WL 207106, *1 (D. Del. Jan. 16, 2014); *see also Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 453 (D. Del. 2014) (general allegation of expenses incurred sufficient to allege damages) (*citing VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606, 613 (Del. 2003) (allegation that plaintiff "as the successor to the Multiflow rights in question, has been damaged by H-P's breach of the 1990 Agreement" sufficient to allege damage from breach of confidentiality provision)); *Kickflip, Inc. v. Facebook, Inc.*, 2015 WL 1517237, *6 (D. Del. Mar. 31, 2015) (contract damage sufficient when complaint cited "bad press coverage, user complaints, and loss of reputation and goodwill").

Moreover, Delaware law does not require "specificity" as to damages.  *DDK Hotels, LLC v. Williams-Sonoma, Inc.,* 2020 WL 4194195, *7 (E.D.N.Y. July 20, 2020) (denying motion to dismiss; Delaware does not require "specificity" as to damages).  Defendants' cases (Def. Br. 16-17) are distinguishable, as they involve cases where damage could not plausibly flow from the alleged breach, or where parties were permitted to replead.  *Phunware, Inc. v. Excelmind Group Limited*, 117 F. Supp. 3d 613, 627-28 (D. Del. 2015) (where contract was subject to termination at time of breaching conduct, complaint could not allege "how such a breach could result in any damages"); *Daniels v. Dover Downs Hotel*, 2017 WL 1929654, *2 (Del. Super. Ct. May 9, 2017) (complaint involving denial of valet parking did not support "recovery of personal injury damages for this breach of contract claim"); *Hydrogen Master Rights, Ltd. v. Weston*, 228

F. Supp. 3d 320, 333 (D. Del. 2017) (dismissing "without prejudice" where complaint alleged disclosure of information in Michigan court filing without consent, but complaint alleged only plaintiff "'has been damaged'"); *Interim Health Care v. Fournier*, 1994 WL 89007, *6 (Del. Ch. Feb. 28, 1994) (decision after trial; evidence showed employee only retained confidential documents and "did not show the documents (or disclose the information contained therein) to anyone"); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883-84 & n.17 (Del. Ch. 2009) (foreign plaintiff not subject to U.S. taxes had no damage from improper K-1; dismissing without prejudice to re-filing "[i]f plaintiff pays higher taxes (or suffers any other injury) as a result of" improper allocation).

### E.     The Independent Tort Doctrine Does Not Apply

Defendants concede that their argument that Plaintiffs' tort claims are duplicative of their contract claim applies only to tort claims asserted against Iacovacci, the alleged contract-breaching party (*see* Def. Br. 17).  Accordingly, tort claims against Enascor are not at issue.  As for Plaintiffs' claim for the breach of the covenant of good faith and fair dealing, it is pleaded as part of the breach of contract claim, not as a separate claim; it is not a tort; and Defendants cite no cases under Delaware law attacking that part of the breach of contract claim (*see supra* p. 18).

Assuming arguendo, as Defendants do, that New York law applies to a Delaware breach of contract action, Plaintiffs' tort claims against Iacovacci – unfair competition and misappropriation – should not be dismissed.  The independent tort doctrine provides:

> Where the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the plaintiff must prove that the defendant breached a duty "independent" of its duties under the contract . . . .  [I]f a party to a contract *does* violate an "independent duty," it *may* be liable in tort. When a defendant breaches its contract with a plaintiff, that defendant may also breach an independent duty in tort if the defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff.

*Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003) (upholding tort claim after trial).

Claims alleging palming off or reverse palming off (Count II), and misappropriation of goodwill (Count I, ¶¶ 46-47) are not duplicative of contract claims.  *Freedom Mortg. Corp. v. Tschernia*, 2021 WL 1163807, *7 (S.D.N.Y. Mar. 26, 2021) (unfair competition "not duplicative" of contract claim where defendants "sought to profit off a competitor's goodwill"). Defendants cite no cases saying otherwise.

As for the remaining portion of the misappropriation-based unfair competition claim, as well as the misappropriation claim (Counts I & III), those claims are not duplicative of the contract action either.  Focusing on the Example Transactions Document and Communications as examples, these misappropriation claims allege the misappropriation of "the results of the skill, expenditures and labors of a competitor'".  *Freedom Mortg.*, 2021 WL 1163807, *7.  That is, the Complaint alleges that Defendants have used the information concerning Brevet's deals, its borrowers, and its experience – all the results of Brevet's labors – to compete with Brevet, as well as misrepresenting the source and nature of the services Defendants had provided and would provide (*e.g.*, ¶¶ 15, 25-27, 29, 31-33).  The breach of contract claim does not require such a showing of competition and misattribution.

Additionally, unlike here, Defendants' cases did not involve "plausible allegation[s] that [party] 'acted in bad faith' by 'obtaining access to plaintiff's business [information] through fraud or . . . abuse of a . . . confidential relationship,' which might enable [Plaintiff] to state an unfair competition claim independent of its contract claim".  *Apotex Corp. v. Hospira Healthcare India Private Ltd*, 2019 WL 3066328, *6 (S.D.N.Y. July 12, 2019) (cited at Def. Br. 17-18). Here, the Complaint alleges Iacovacci's bad faith, deception and willful intent to harm Brevet (*see Carvel*, 350 F.3d at 16), including Iacovacci's knowingly using Brevet's borrowers, deals, and experience, while in some circumstances doing little more than substituting "Enascor" for

"Brevet", in addition to flouting the regulatory environment concerning such use (*e.g.*, ¶¶ 4-5, 14-17, 27-28, 32-33, 45-48).  *See, e.g., Bytemark, Inc. v. Xerox Corp.,* 342 F. Supp. 3d 496, 509 (S.D.N.Y. 2018) (unfair competition claims not duplicative where complaint contained "allegations of wrongful conduct extraneous to the Confidentiality Agreements"); *Amphenol Corp. v. Paul,* 2013 WL 12251356, *7 (D. Conn. Mar. 28, 2013) ("breach of contract claim relies upon the legal and contractual obligations outlined in the IPA while the unfair competition claim focuses upon the misappropriation and misuse of Amphenol's confidential information").  Brevet's tort claims against Iacovacci are not duplicative of its breach of contract claim.  They should stand.

## F.     Brevet Did Not Engage in Improper Lumping of Parties

Defendants invent a "mere technical quibble" (Def. Br. 19) as their final challenge to the Complaint, arguing that a failure to differentiate among plaintiffs merits dismissal, presumably as a violation of Fed. R. Civ. P. 8.  Defendants cite to no cases from this circuit where a court has found that that the lumping of plaintiffs was fatal to a claim.  The one Second Circuit case Defendants cite dealt with "lumping all the ***defendants*** together" without giving "each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (cited at Def. Br. 18) (emphasis added; dismissal affirmed after plaintiff had "several opportunities to correct" complaint's "manifest flaws").  Even as to that inapposite situation, "'[n]othing in Rule 8 "prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.'"  *Manchanda v. Navient Student Loans & Educ. Credit Mgmt. Corp*., 2020 WL 5802238, *2 (S.D.N.Y. Sept. 29, 2020) (Pauley, J.).  Brevet has given each defendant fair notice of what its claims are and the grounds upon which they rest.

The out-of-circuit case Defendants cite is inapposite.  The plaintiffs there were unrelated employees suing under the Fair Labor Standards Act, and were thus required to set forth the bases on which each qualified for relief.  *Hu v. Windhaven Ins. Co.,* 2015 WL 12835683, *2-3 (M.D. Fla. Mar. 16, 2015) (leave to replead granted) (cited at Def. Br. 18).  Here, the Plaintiffs are related entities, and Defendant Iacovacci is a former Managing Director of Brevet (¶¶ 1, 11), with knowledge of the Brevet entities and structure.  As for Defendants' unsupported claim that the owner of information needs to be pleaded, Defendants' citation to the LLC Agreements belies their argument (Def. Br. 19).  Both §§ 7.2 and 7.3 of the LLC Agreements apply to documents and information of the Short Duration LLCs and "any of its affiliates" (¶¶ 35, 36; *see also supra* p. 4 (Brevet Capital Management manages investor presentation fund)).  Further, to the extent pertinent, discovery will inform the scope of the ownership of the specific information and documents misappropriated and used by Defendants.  Damages, too, will be dependent upon what full discovery on the merits will reveal.  Under these circumstances, there is no basis to dismiss Brevet's Complaint.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety.

Dated:  New York, New York
        May 20, 2021

Respectfully submitted,

REED SMITH, LLP
By: /s/ Louis M. Solomon
       Louis M. Solomon
599 Lexington Avenue
New York, New York 10022
(212) 549-0400
*Attorneys for Plaintiffs*