```
┌─────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #:_____                     │
│ DATE FILED:___8/31/2022___                │
└─────────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BREVET HOLDINGS, LLC *et al.*,

                    Plaintiffs,

          -against-

ENASCOR, LLC *et al.*,

                    Defendants.

---

1:21-cv-01540 (MKV)

**OPINION AND ORDER
GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Brevet Holdings, LLC, Brevet Short Duration Partners, LLC (f/k/a Brevet Capital Partners III, LLC), Brevet Short Duration Holdings, LLC (f/k/a Brevet Capital Holdings III, LLC), and Brevet Capital Management, LLC (collectively, "Brevet" or "Plaintiffs") bring this action against Defendants Enascor, LLC and Paul Iacovacci for claims of unfair competition, misappropriation, unjust enrichment, and breach of contract.  (Second Amended Complaint ("SAC") [ECF No. 49]).  In particular, Brevet alleges that Iacovacci, a former managing Director at Brevet until he was terminated in 2016, misappropriated proprietary communications and documents from Brevet for use in his own competing financial management and advisory service firm, Enascor.

Defendants have moved to dismiss Brevet's Second Amended Complaint.  [ECF No. 38].  In support of their motion, Defendants filed a memorandum of law (Def. Br. [ECF No. 39]) and the declaration of Jason Cyrulnik, counsel for Defendants, with several exhibits attached

1

(Cyrulnik Decl. [ECF No. 41]).[1]  In opposition to the motion, Brevet filed a memorandum of law.  (Pl. Opp'n [ECF No. 49]).  Defendants filed a reply (Def. Reply [ECF No. 52]).

For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion to Dismiss.  The Court also denies Plaintiff's request to maintain under seal certain documents filed with Defendants' Motion to Dismiss.

## BACKGROUND

### I.   Factual Background

#### A.  Iacovacci Is Terminated From Brevet And Starts Enascor

For several years, Defendant Paul Iacovacci was a Managing Director of Brevet Holdings, a registered investment advisor, and a Member of Brevet Short Duration Holdings, LLC and Brevet Short Duration Partners, LLC (collectively, the "Short Duration LLCs").  (SAC ¶¶ 1, 11, 18).[2]  Iacovacci was terminated by Brevet in 2016 (SAC ¶ 1), the circumstances of which are the subject of pending wrongful-termination and related claims against Brevet in New York State court (*see Iacovacci v. Brevet Holdings, LLC*, No. 158735/2016 (N.Y. Sup. Ct.)), as well as federal hacking claims against Brevet in this Court (*see Iacovacci v. Brevet Holdings, LLC*, No. 18 CIV. 8048 (MKV) (S.D.N.Y.)).

While Iacovacci and Brevet have been in litigation since Iacovacci's termination in 2016, recently, Iacovacci launched Enascor, a hedge fund that competes against Brevet.  (SAC ¶ 1). Brevet alleges that while Iacovacci was employed with Brevet, he misappropriated proprietary

---

[1] Exhibits D through J attached to Mr. Cyrulnik's declaration were provisionally filed under seal.  [ECF No. 41]. Plaintiff moves to maintain these exhibits under seal.  [ECF No. 42].  Defendants oppose this request [ECF No. 46]. Plaintiff has filed a reply in support of its request [ECF No. 48].

[2] Unless otherwise noted, the facts are taken from the SAC, and are accepted as true for the purposes of this motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, this Court need not accept as true legal conclusions contained in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

and confidential information, which he has now used to promote his competing business,

Enascor.  (SAC ¶ 14).[3]

## B.  Allegedly Misappropriated Materials

Brevet alleges that Iacovacci misappropriated several types of confidential documents for

use in promoting Enascor.  First, Brevet alleges that Defendants misappropriated at least one

document listing certain identifiable transactions engaged in by Brevet (SAC ¶¶ 16, 31;

"Example Transactions Document" [ECF 44-7]).[4]  Brevet alleges that the Example Transactions

Document and several other Brevet documents that Iacovacci emailed himself while he was at

Brevet also included metrics such as percentages and rates of return, fees and coupons.  (SAC

¶¶ 16, 31).

Brevet alleges that Defendants also misappropriated, at least in part, the form and content

of one or more confidential investor presentations (SAC ¶ 30; the "Investor Presentations" [ECF

Nos. 44-4–44-6]).  In particular, Brevet alleges that Defendants misappropriated information

about, *inter alia*, Brevet's business model and deal sourcing.  Plaintiff alleges that while

---

[3] In the New York State Court related action, Brevet filed counterclaims against Iacovacci, alleging that he misappropriated confidential information while employed at Brevet "in order to appropriate them to his own uses." (*See* Answer and Counterclaim, *Iacovacci v. Brevet Holdings, LLC*, No. 158735/2016, Dkt. 7 (N.Y. Sup. Ct.) ("Brevet State Ct. Counterclaims") ¶ 57.  After Iacovacci founded Enascor, Brevet moved in the state court proceeding to amend its counterclaim to include allegations with respect to Iacovacci's activity with Enascor.  (*See* Memorandum of Law In Support Of Motion For Leave to Amend, *Iacovacci v. Brevet Holdings, LLC*, No. 158735/2016, Dkt. 1168 (N.Y. Sup. Ct. Jan. 11, 2021).  The State court denied Brevet leave to amend its counterclaim, reasoning that Brevet's claims with respect to Enascor were already before this Court in this proceeding.  (Decision and Order, *Iacovacci v. Brevet Holdings, LLC*, No. 158735/2016, Dkt. 1333 (N.Y. Sup. Ct. Mar. 20, 2021).  That decision was affirmed by the Appellate Division.  *Iacovacci v. Brevet Holdings, LLC*, 204 A.D.3d 535, 536, 165 N.Y.S.3d 287 (1st Dep't 2022).

[4] Brevet did not attach the underlying documents that it alleges Iacovacci misappropriated to the Second Amended Complaint.  However, on a motion to dismiss under Rule 12(b)(6), Courts may consider any documents incorporated by reference in the complaint.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  A document is incorporated by reference where the complaint "make[s] a clear, definite and substantial reference" to it.  *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275–76 (S.D.N.Y. 2002) (collecting cases).  The Second Amended Complaint clearly incorporates the allegedly misappropriated documents by reference.  It repeatedly refers to the allegedly misappropriated documents and describes their contents.  (SAC ¶¶ 16, 21, 28, 30–31).  Accordingly, the Court may consider these documents in deciding Defendants' Motion to Dismiss.

Iacovacci was employed with Brevet, he also emailed himself one or more versions of Brevet's investor presentation.  (SAC ¶ 30).  Brevet alleges that these presentations contained internal confidentiality warnings (SAC ¶ 30).

Brevet also alleges that Defendants misappropriated sourcing presentations and deal sourcing templates for use with targeted recipients, including both prospective investors and borrowers (the "Communications").  (SAC ¶ 21).  Brevet alleges that, whenever these communications are sent to external addresses, the practice and protocol is that the Communications carry with them a "confidentiality" designation that provides, in substance, that the Communications are intended only for the recipient(s) listed, that their contents are confidential, and that the recipient is strictly prohibited from using or copying the Communications.  (SAC ¶ 24).

Last, Brevet alleges that Defendants misappropriated a one-page "Firm Overview" document containing "carefully honed articulations" of Brevet's "attributes" (SAC ¶ 28; the "Firm Overview" [ECF No. 44-3]).

## II.    Procedural History

Brevet filed this action against Enascor and Iacovacci in New York State court, asserting state-law and federal Lanham Act claims.  [ECF No. 1, ¶ 1].  Enascor timely removed the action to this Court on the basis of federal question jurisdiction.  (*See Brevet Holdings, LLC et al v. Enascor, LLC et al*, No. 21 CIV. 00516 (S.D.N.Y.)).  Thereafter, based on Brevet's representation at oral argument that it would dismiss its Lanham Act claims with prejudice, Judge Pauley, to whom this case was previously assigned, remanded the case to State Court.

However, the same day the action was remanded, Defendants removed the action to federal court on diversity grounds.  [ECF No. 1, ¶ 6].

Thereafter, with leave of the Court, Brevet filed a Second Amended Complaint,[5] asserting five causes of action: (1) unfair competition (misappropriation) against Enascor and Iacovacci (SAC ¶¶ 42–51); (2) unfair competition (palming off) against Iacovacci and Enascor (SAC ¶¶ 52–62); (3) misappropriation against Iacovacci and Enascor (SAC ¶¶ 63–67); (4) unjust enrichment, in the alternative, against Enascor (SAC ¶¶ 68–71); and (5) on behalf of the two Brevet "Short Duration LLCs," a claim for breach of contract against Iacovacci (SAC ¶¶ 72–79).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, the Court must limit its consideration to the factual allegations in the complaint, "which are accepted

---

[5] At the Court's instruction, Brevet had earlier filed on the federal docket an amended complaint that Brevet had filed in State Court after the case originally was removed on federal question jurisdiction.  [ECF No. 20].

as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Roth*, 756 F.3d at 180 (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## DISCUSSION

### I.   Motion To Dismiss

Defendants move to dismiss Brevet's Second Amended Complaint On Four Grounds. First, Defendants contend that, since Brevet's claims are premised on Enascor and Iacovacci's alleged copying of written documents, they are preempted by the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 301 *et seq*.  (Def. Br. 7).  Second, Defendants move to dismiss on the ground that Brevet fails to allege the required elements of each of its individual causes of action.  (Def. Br. 10).  Third, Defendants argue that Plaintiff's tort claims are barred by the independent tort doctrine.  (Def. Br. 17).  Finally, Defendants contend that the Second Amended Complaint should be dismissed for improper group pleading.  (Def. Br. 18).

#### A.  Brevet's Claims Are Not Preempted By The Federal Copyright Act

Brevet's state-law claims are not preempted by the Copyright Act.  Under the complete-preemption doctrine, certain federal statutes are construed to have such extraordinary preemptive force that state-law claims covering matters within the scope of the federal statute are completely preempted.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *see also Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) ("Complete preemption occurs when the 'pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" (citation omitted)).  The Second Circuit has held that the Copyright

Act is one such statute.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305

(2d Cir. 2004); *see In re Jackson*, 972 F.3d 25, 33 (2d Cir. 2020) (affirming dismissal of

Connecticut common law right of publicity claim on ground that it was preempted by the

Copyright Act).  The Copyright Act completely preempts a state law claim if "(i) the work at

issue 'come[s] within the subject matter of copyright' [the 'subject matter requirement'] and (ii)

the right being asserted is 'equivalent to any of the exclusive rights within the general scope of

copyright [the 'general scope requirement'].'"  *Forest Park Pictures v. Universal Television

Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012) (alteration in original) (quoting 17 U.S.C. §

301(b)).  If the court "determines that a state law claim has been completely preempted and

thereby assumes jurisdiction over it, the court must then dismiss the claim for failing to state a

cause of action."  *Briarpatch*, 373 F.3d at 309.  Brevet's claims are not preempted because

neither the subject matter nor general scope requirements are met here.

First, the subject matter requirement is not met here because Brevet's claims are not

grounded in the copying of its protected expression.  This requirement is satisfied only if the

plaintiff's claim "applies to a work of authorship in a tangible medium of expression and falling

within one of the categories of copyrightable works."  *Id.* at 305.  Brevet alleges that Defendants

misappropriated proprietary and confidential information concerning certain transactions

engaged in by Brevet, sourcing presentations and deal sourcing templates, and a one-page

document containing an overview describing Brevet's practice.  (SAC ¶¶ 16, 21, 28, 31).  That

information falls outside the subject matter of the Copyright Act.  *See Tarazi v. Truehope Inc.*,

No. 13CIV1024LAKJCF, 2017 WL 5957665, at *16 (S.D.N.Y. July 28, 2017), *report and

recommendation adopted*, No. 13-CV-1024 (LAK), 2017 WL 5957745 (S.D.N.Y. Nov. 30,

2017) (no preemption for unjust enrichment claim based on the use of a defendant's "marketing

and business strategies"); *R.F.M.A.S., Inc. v. So*, 619 F. Supp. 2d 39, 87 (S.D.N.Y. 2009) (no preemption for misappropriation and unjust enrichment claims based on "types of information [that] are not covered by copyright law" such as "sales data, marketing, customer preferences and distributor information").

The general scope requirement for complete preemption under the Copyright Act is also not met here because Brevet's claim involves an extra element that makes its claims qualitatively different from a copyright infringement claim. The general scope requirement is met only when the "state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Briarpatch*, 373 F.3d at 305 (citation omitted). "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display." *Id.* Thus, if the state law claim includes "any extra elements that make it qualitatively different from a copyright infringement claim," then the claim is not preempted. *Id.* at 305-06 (citations omitted). The Second Circuit has recognized that preemption does not apply to claims alleging breaches of fiduciary duty, unfair competition claims based upon breaches of confidential relationships, and trade secret claims because such allegations satisfy the extra element test. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992); *see also ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744, at *5 (2d Cir. Mar. 10, 2022) ("'[U]nfair competition claims based upon breaches of confidential relationship, breach of fiduciary duty and trade secrets' are not preempted." (citation omitted)).

Brevet's claims are all premised on Iacovacci's alleged breach of a confidential relationship with Brevet.  And in particular, Brevet alleges that Iacovacci had a duty to keep confidential certain materials and information he received during his employ with Brevet, both under the terms of the Short Duration LLCs' LLC Agreements (the "LLC Agreements") and because the materials he received during his employment were marked as confidential.  (SAC ¶¶ 24, 30, 72–75).  Brevet's claims, the gravamen of which are premised on confidential relationships, the misappropriation of trade secrets, and unfair competition, are not preempted by the Copyright Act and Defendants' Motion to Dismiss on this ground is denied.

### B. Brevet Alleges Facts Sufficient To State A Claim For Misappropriation, Palming Off, And Breach Of Contract, But Fails To State A Claim For Unjust Enrichment

#### 1. *Misappropriation (Counts I And III)*

Defendants primarily argue that Brevet's claims premised on the misappropriation of confidential information should be dismissed because the material misappropriated was not actually confidential.  Under New York law,[6] to state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage.  *See Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*, 283 A.D.2d 448, 450, 729 N.Y.S.2d 142, 144–45 (2nd Dep't 2001); *B-S Indus. Contractors Inc. v. Burns Bros. Contractors Inc.*, 256 A.D.2d 963, 965, 681 N.Y.S.2d 897, 899 (3rd Dep't 1998)); *see also Trahan v. Lazar*, 457 F. Supp. 3d 323, 356

---

[6] This matter is before the Court by virtue of diversity jurisdiction.  (FAC ¶ 5).  The Court, sitting in diversity, applies the laws of New York to Brevet's tort claims in this dispute.  *See Clarex Ltd. v. Natixis Sec. Am. LLC*, 2013 WL 2631043, at *2 (S.D.N.Y. June 11, 2013) ("Where the parties' briefs assume that New York law controls . . . such implied consent . . . is sufficient to establish choice of law.") (internal quotation marks omitted).  With respect to Brevet's tort claims, both parties' briefing assumes that New York law applies to this action.  (Def. Br. 13; Pl. Opp'n 13).

(S.D.N.Y. 2020).[7]  In this Circuit, claims for unfair competition premised on the misappropriation of confidential information are routinely analyzed using the same standards as claims for misappropriation of trade secrets.  *See Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 179 (E.D.N.Y. 2018) ("A claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action."); *see also Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 19-cv-6793, 2021 WL 535217, *6 (E.D.N.Y. Feb. 12, 2021) (dismissing the plaintiff's unfair competition claim as duplicative of the plaintiff's DTSA and common law misappropriation of trade secret claims) (citation omitted).

Manifestly, to state a claim for misappropriation of confidential information, the information at issue must be confidential.  If the alleged confidential information is actually public, the claim must be dismissed.  *See Am. Inst. of Chem. Engineers v. Reber-Friel Co.*, 682 F.2d 382, 391 (2d Cir. 1982) (dismissing unfair competition claim where "much of the relevant information has been made available to the public through brochures and promotional materials"); *see also Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986) ("the most important consideration" in determining whether information is a trade secret is "whether the information was secret").  However, absolute secrecy is not required; to plead the possession of a trade secret, a plaintiff must show "the employment of precautionary measures to preserve such exclusive knowledge by limiting legitimate access by others" so that, "except by the use of improper means, there would be difficulty in acquiring the information."  *Delta Filter Corp. v.*

---

[7] Brevet asserts both a claim for unfair competition based on the misappropriation of confidential information (Count I) and a claim for the misappropriation itself (Count III).  (SAC ¶¶ 42–51, 63–67).  "[W]here an unfair competition claim and a misappropriation claim arise from the same factual predicate . . . the two claims generally rise or fall together."  *Pauwels v. Deloitte LLP*, No. 19-CV-2313 (RA), 2020 WL 818742, at *10 (S.D.N.Y. Feb. 19, 2020) (quoting *Faiveley Transp. USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211, 221 (S.D.N.Y. 2010)).  Accordingly, the Court evaluates these two claims together.

*Morin*, 108 A.D.2d 991, 992, 485 N.Y.S.2d 143 (3d Dep't 1985); *Edelman v. Starwood Cap.*

*Grp., LLC*, 70 A.D.3d 246, 249, 892 N.Y.S.2d 37, 39 (1ˢᵗ Dep't 2009) ("The claim for

misappropriation of proprietary information falls short because plaintiffs did not allege that

Edelman took sufficient precautionary measures to insure that the information remained

secret."); *see also Defiance Button Mach. Co. v. C & C Metal Prod. Corp.*, 759 F.2d 1053, 1063

(2d Cir. 1985) (under New York law, "the courts require that the possessor of a trade secret take

reasonable measures to protect its secrecy"); *Pauwels*, 2020 WL 818742, at *5 ("[T]o

successfully plead possession of a trade secret, Plaintiff must show that [he] took substantial

measures to protect the secret nature of [the secret]." (internal quotation marks and citation

omitted)).  In contrast, "[i]f an individual discloses his trade secret to others who are under no

obligation to protect the confidentiality of the information, or otherwise publicly discloses the

secret, his property right is extinguished."  *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495,

514 (S.D.N.Y. 2017) (quoting *Structured Cap. Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d

816, 832 (S.D.N.Y. 2016)).

     With respect to the Communications, Firm Overview, and Investor Presentation,

Defendants contend that this information is not confidential because it was designed for

marketing to the public.  (Def. Br. 11–13).  Defendants argue that "multiple iterations of [emails

containing these materials] were disseminated to thousands of recipients, without any promise by

prospective investors or borrowers to keep the information confidential."  (Def. Br. 12).

However, at the pleadings stage, the Court must accept Plaintiffs' allegations as true.  *See*

*Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008).  The Second Amended Complaint alleges

that, though this information was disseminated outside of Brevet to prospective investors (SAC

¶¶ 18, 20, 21), it was marked with confidentiality warnings and designations that the

communications were "intended only for the recipient(s) listed; that their contents are confidential; and that it is strictly prohibited to use or copy the Communications." (SAC ¶¶ 24, 30). Moreover, the Second Amended Complaint alleges that this information was not "mass market[ed] to unknown – and potentially unqualified – persons," but rather that Brevet "approache[d] only 'qualified' investors." (SAC ¶ 20). Significantly, Defendants cite to no allegation in the complaint, or any other evidence for that matter, to support their claim that these materials were disseminated to thousands of recipients without any protective or precautionary measures. Accordingly, drawing all reasonable inferences in favor of the plaintiff, Brevet has alleged sufficient facts to establish that these materials were confidential.

With respect to the Investor Presentation, Defendants further contend that Plaintiff lacks standing to pursue a claim for misappropriation because that presentation was for the promotion of Brevet Direct Lending – Intermediate Duration Fund, L.P., which is not a party to this action. (Def. Br. 12). However, the very document that Defendants reference indicates that Brevet Capital Management, LLC — the plaintiff in this action — is the manager of the fund at issue. (Investor Presentation at 25). Moreover, Iacovacci's duty of confidentiality under the terms of the LLC Agreements extends to "the Company and any of its affiliates." (SAC ¶ 36).

With respect to the Example Transactions Document, Defendants argue that Iacovacci could not have misappropriated the contents of this document because the document merely describes Iacovacci's own professional background and experience. (Def. Br. 13). Defendants cite to no caselaw in support of this argument. Regardless, the SAC alleges that Iacovacci only was involved in "*some*" of the transactions listed in the Example Transactions Document and that his role was limited. (SAC ¶¶ 16, 32).

Finally, Defendants argue that Brevet inadequately pleads harm or likely confusion. (Def. Br. 13). The complaint alleges Defendants misappropriated information about Brevet's own clients and experience and are now passing this information off as Defendants' own. (SAC ¶¶ 32–34). The complaint alleges that, given the regulated environment in which the parties operate where such information can generally only be cited when all investment decision makers have moved to a new employer, Defendants' claim of credit for Brevet's track record information confuses potential borrowers and harms Brevet. (SAC ¶¶ 17, 32–33, 58). At this stage, accepting all Brevet's allegations as true and drawing all reasonable inferences in its favor, Brevet has alleged sufficient facts upon which to state a claim for unfair competition under New York law.

### 2. *Palming Off (Count II)*

Defendants move to dismiss Brevet's claim for palming off on the ground that Enascor never held itself out to potential investors and borrowers as Brevet. Specifically, Defendants argue that, in Enascor's communications with potential borrowers or investors, Iacovacci represented that he was no longer associated with Brevet. (Def. Br. 13–14). In support of this argument, Defendants cite to one solicitation email sent in December 2020, to what appears to be one potential borrower, in which Iacovacci represents that he left Brevet and started his own firm. (Def. Br. 14 (citing [ECF No. 41-5])).

New York law has "long recognized two theories of common-law unfair competition: palming off and misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 850 N.Y.S.2d 366, 880 N.E.2d 852, 858 (N.Y. 2007). "Palming off" or "passing off" refers to "the sale of the goods of one manufacturer as those of another." *Id.* at 858; *see also Attorney's Process & Rsch. Serv. Inc. v. Am. Process & Rsch. Corp.*, 177 Misc. 2d 292, 293, 676 N.Y.S.2d 419, 419 (Sup.

Ct. 1998) ("[U]nder the common law of New York, the 'palming off' of one's goods or services as those of another constitutes unfair competition." (citation omitted)).

Brevet sufficiently states a claim for passing off.  Brevet alleges that Defendants are "holding themselves out as providing Brevet's services."  (SAC ¶ 58).  In particular, Brevet alleges that the Securities and Exchange Commission (the "SEC") restricts a member of a private equity company from "tout[ing] the track record of the member's prior employer unless other investment decision makers with whom the member had worked at the prior employer moved with the member."  (SAC ¶ 17).  Brevet alleges that by listing Brevet's experience as his own, given the regulated environment, Iacovacci is "inducing recipients to use [his] services by making them believe they are getting Brevet's services."  (SAC ¶ 58).

Defendants' reliance on one email in which Iacovacci told one potential borrower that he had left Brevet is not enough to defeat Brevet's passing off claim at this stage of the litigation. At the pleading stage, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  Although the Court may consider documents incorporated into the Complaint by reference that contradict a plaintiff's allegations, *see Kamholtz v. Yates Cnty.*, 350 F. App'x 589, 592 (2d Cir. 2009), the email that Defendants cite was not incorporated into the Second Amended Complaint.  Moreover, that one off example of an email where Iacovacci identified his new firm as Enascor does not contradict Brevet's more general allegation that Defendants held themselves out as providing Brevet's services.  (*See* SAC ¶ 58).  Accordingly, Defendants' motion to dismiss Brevet's Palming Off claim is denied.

### 3.  *Unjust Enrichment (Count IV)*

Brevet pleads, in the alternative, that Enascor was unjustly enriched by obtaining

revenues and profits resulting from its alleged misappropriation and palming off of Brevet's

confidential information.  (SAC ¶ 69).  Under New York law, to state a claim for unjust

enrichment, a plaintiff must plead that (1) the defendant was enriched, (2) at the plaintiff's

expense, and (3) equity and good conscience militate against permitting defendant to retain what

the plaintiff is seeking to recover.  *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, 973

N.E.2d 743, 746 (N.Y. 2012); see also *Briarpatch*, 373 F.3d at 306.  The plaintiff must plead

facts showing that the defendant actually received a "specific" and "direct" benefit.  *See*

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 183, 944 N.E.2d 1104, 1111 (N.Y. 2011)

("Without sufficient facts, conclusory allegations that fail to establish that a defendant was

unjustly enriched at the expense of a plaintiff warrant dismissal."); *see also Kaye v. Grossman*,

202 F.3d 611, 616 (2d Cir. 2000) (evidence did "not establish the specific and direct benefit

necessary to support an unjust enrichment claim."); *Pauwels v. Bank of New York Mellon Corp.*,

No. 19-CV-2313 (RA), 2021 WL 1164501, at *7 (S.D.N.Y. Mar. 26, 2021) ("[I]n order to state

an unjust enrichment claim, a plaintiff must show that the defendant actually received a benefit.

Such a benefit must be both 'specific' and 'direct.'" (quoting *Regnante v. Sec. & Exch. Offs.*, 134

F. Supp. 3d 749, 772 (S.D.N.Y. 2015))).  As such, a plaintiff cannot state a claim for unjust

enrichment with an allegation merely "premised on an unnamed benefit that may accrue in the

future."  *Regnante*, 134 F. Supp. 3d at 773 (citing *Kaye*, 202 F.3d at 616); *see also BAT, LLC v.*

*TD Bank, N.A.*, No. 15CV5839RRMCLP, 2018 WL 4693644, at \*10 (E.D.N.Y. Sept. 28, 2018) (holding that an unjust enrichment claim cannot be premised on the "possibility" of enrichment).

Brevet does not allege any specific and direct benefit Enascor received at its expense. Brevet does not allege that it lost any potential clients to Enascor or that Enascor secured any additional profits or that Brevet lost any profits because of Defendants' alleged misappropriation. *See Washington v. Kellwood Co.*, No. 05 CIV. 10034 (DAB), 2009 WL 855652, at \*11 (S.D.N.Y. Mar. 24, 2009) (dismissing unjust enrichment claim because "nowhere do Plaintiffs explain how Defendant was enriched, how the alleged enrichment came at Plaintiffs' expense, or why this alleged enrichment was inequitable"); *Ainbinder v. Potter*, 282 F. Supp. 2d 180, 190 (S.D.N.Y. 2003) (dismissing unjust enrichment claim because "[e]ven reading the pleadings liberally, the plaintiffs have not coherently alleged how the defendants were unjustly enriched at the plaintiffs' expense").

Citing to *Jones v. East Brooklyn Security Servies Corp.*, No. 11-CV-1021 JG SMG, 2012 WL 3235784, at \*6 (E.D.N.Y. Aug. 7, 2012), Brevet argues that it need not plead facts showing how Defendants were enriched at its expense because "Enascor's profits and transactions are 'peculiarly within the knowledge of the defendants.'" (Pl. Opp'n 18). However, *Jones* is wholly inapposite and does not support Brevet's argument. The *Jones* case involved a claim that the defendants were unjustly enriched because they allegedly failed to appropriately compensate the plaintiff for time worked. *Jones*, 2012 WL 3235784, at \*7. Jones alleged that the defendants were obligated to pay prevailing wages under the terms of public works contracts they had entered into with public entities and that by failing to adequately compensate him, defendants "were compensated under those public work contracts as if they had properly paid out the requisite wages and benefits, when in fact they had not." *Id.* Although Jones' pleadings with

16

respect to the details of the public works contracts were sparse, the district court found that Jones has sufficiently alleged the existence of damages.  *Id.* at *6.  In contrast, it was only the extent of the damages, *i.e.*, the amount defendants had profited from those contracts, which was "peculiarly within the knowledge of the defendants."  *Id.*  Unlike in *Jones*, Brevet does not allege any facts that would support a reasonable inference that Enascor secured any specific and direct benefit at Brevet's expense.  Accordingly, Brevet fails to state a claim for unjust enrichment and that claim is dismissed.

### 4. *Breach Of Contract (Count V)*

Brevet alleges sufficient facts to state a claim for Breach of Contract.  The SAC specifically alleges that Iacovacci breached sections 7.2 and 7.3 of the LLC Agreements as well as the implied covenant of good faith and fair dealing.  (SAC ¶¶ 72–75).  Section 7.2 of the LLC Agreements provides in part:

> During the time that a Member owns his Interest in the Company and at all times thereafter, a Member shall (i) not use for his personal benefit and shall keep secret and non-public any and all proprietary information and knowledge concerning the Company and any of its affiliates, including, without limitation, the know-how, trade secrets and any information relating to the trading systems, processes, services and clients and other business and financial affairs of the Company and any of its affiliates (collectively, the "Confidential Information") to which he has had or may have access, and (ii) shall not disclose such Confidential Information to any person . . . .

(SAC ¶ 36).  Section 7.3 of the LLC Agreements defines "Company Property" broadly as

> Any and all writings, inventions, improvements, processes, techniques, copyrights, trademarks, tradenames, service marks, and other intangible or intellectual property rights relating to the Company or any of its affiliates that may be invented, conceived, developed or enhanced by the Company or by the Members prior to, or during, their membership in the Company (collectively, the "Company Property"), shall be the sole property of the Company and the Member hereby waives any right or interest that he may otherwise have in respect thereto.

(SAC ¶ 35).  The SAC alleges that Iacovacci breached section 7.2 of the LLC Agreements when he disseminated Brevet's confidential materials.  (SAC ¶¶ 30–32).

Defendants first argue that Brevet's Breach of Contract claim is untimely.  (Def. Br. 16). Under Delaware law, which both parties agree is the law that governs the LLC Agreements (Def. Br. 16; Pl. Opp'n 20),[8] no party may assert a claim for breach of contract "after the expiration of 3 years from the accruing of the cause of such action."  10 Del. C. § 8106(a).  For purposes of section 8106(a), a breach of contract claim "accrues and the Statute begins to run at the time the contract is broken, not at the time when actual damage results or is ascertained."  *Lehman Bros. Holdings, Inc. v. Kee*, 268 A.3d 178, 185 (Del. 2021); *see also* 10 Del. C. § 8106(a).  This is true "even if the plaintiff is ignorant of the cause of action."  *Kee*, 268 A.3d at 185.

Defendants contend that Brevet's breach of contract claim accrued in 2016, when Iacovacci left the employment of Brevet and allegedly misappropriated this confidential information.  (Def. Reply 8).  Defendants argue that Brevet was aware of this alleged theft in 2016 because Brevet brought claims against Iacovacci for that alleged theft in New York State court in 2016.  Specifically, Defendants cite to Brevet's 2016 counterclaim in the state court action in which Brevet alleged that Iacovacci misappropriated "confidential and proprietary materials from Brevet, in order to appropriate them to his own uses."  (*See* Brevet State Ct. Counterclaims ¶ 57).

However, under Delaware law, where there are allegations of multiple breaches of an agreement, "the statute of limitations for each discrete wrongful transaction begins to run upon the occurrence of each transaction."  *Desimone v. Barrows*, 924 A.2d 908, 925 (Del. Ch. 2007);

---

[8] Moreover, the LLC Agreements themselves, which are incorporated by reference in the SAC, state that Delaware law governs.  (Cyrulnik Decl. Ex. A).

*see also Price v. Wilmington Tr. Co.*, No. CIV.A. 12476, 1995 WL 317017, at *2–3 (Del. Ch. May 19, 1995) (finding in breach of contract case that each alleged overcharging gave rise to a separate cause of action, triggering a new statute of limitations period, because the continuing wrong could be segmented into independent wrongful acts).  In the state action, Brevet's allegations center on alleged breaches that occurred in 2016 while Iacovacci was still employed by Brevet.  (Brevet State Ct. Counterclaims ¶¶ 51–57).  Brevet now alleges that, in a separate breach of the LLC Agreements, Iacovacci again disseminated confidential materials in 2020 to promote Enascor.  (SAC ¶¶ 26, 28, 31, 33, 37).  This separate breach constitutes a separate breach of the LLC Agreements and starts a new limitations period.  *See Iacovacci*, 204 A.D.3d at 536 ("Defendants' current counterclaims are primarily based on events that took place in 2016, whereas the federal Enascor action addresses plaintiff and Enascor's more recent activity.").

Defendants also argue that this Court should dismiss Brevet's Breach of Contract claim as duplicative of the state court claims.  (Def. Br. 16).  Under the doctrine enumerated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), abstention can be proper in certain situations involving the contemporaneous exercise of concurrent jurisdiction.  *Id.* at 817.  However, abstention from exercising federal jurisdiction "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (quoting *Colorado River*, 424 U.S. at 813).  Thus there is a "heavy presumption favoring the exercise of jurisdiction."  *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) ("[A]bstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." (citation omitted)).

19

District courts may abstain if, after an analysis of the federal and state action, the Court determines that the two proceedings are "concurrent" or "parallel" and that exceptional circumstances warrant abstention. *See Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). This analysis is "heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16).

Defendants' argument on this point is cursory. They devote but a single sentence to this argument, do not mention any of the relevant factors or considerations, and do not even cite to the *Colorado River* decision. (Def. Br. 16). Nonetheless, after an analysis of the federal and state action, the Court determines that the two claims are not parallel. As discussed above, the state court proceeding is primarily focused on alleged breaches of the LLC Agreements that occurred while Iacovacci was employed at Brevet in 2016. (Brevet State Ct. Counterclaims ¶¶ 51–57). The allegations here concern a subsequent and separate breach involving allegations that Iacovacci disseminated confidential materials in 2020 to promote Enascor. (SAC ¶¶ 26, 28, 31, 33, 37). As such, the resolution of Brevet's state court claims would not necessarily resolve Brevet's claims here. *See Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) ("[P]arallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." (citation omitted)). Indeed, the state court has already denied Brevet leave to amend its counterclaims in the state court proceeding to add allegations concerning Iacovacci's activity with Enascor because it is already the subject of this suit. *Iacovacci*, 204 A.D.3d at 536. The Court therefore will not displace the heavy presumption in favor of exercising jurisdiction over a claim properly before it.

Finally, Defendants argue that Brevet's breach of contract claim fails for lack of damages. (Def. Br. 16–17). However, at the pleading stage, the Second Amended Complaint

sufficiently alleges damages with respect to Brevet's claim for breach of contract.  First, the complaint seeks equitable relief from Iacovacci's continued use of allegedly confidential and proprietary business materials.  (SAC ¶ 79).  Moreover, the complaint alleges that Brevet lost "the full value of their contracts with" Iacovacci (SAC ¶ 75), goodwill (SAC ¶¶ 46–47), and Brevet's expenditure of "time, skill, and money in developing its proprietary and confidential business materials."  (SAC ¶¶ 44, 54).  At this stage, accepting all well-pleaded allegations as true and drawing all reasonable inferences in Brevet's favor, Brevet has stated a plausible claim for breach of contract.  *See Kickflip, Inc. v. Facebook, Inc.*, No. CV 12-1369-LPS, 2015 WL 1517237, at *6 (D. Del. Mar. 31, 2015) (contract damage sufficient when complaint cited "bad press coverage, user complaints, and loss of reputation and goodwill").  Moreover, under Delaware law, even if compensatory damages are not demonstrated, "the breach of a contractual obligation often warrants an award of nominal damages."  *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, No. CIV.A. 3158-VCL, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009); *see also* Restatement (Second) of Contracts § 346 ("There are . . . instances in which loss is caused but recovery for that loss is precluded because it cannot be proved with reasonable certainty . . . .  In all these instances the injured party will nevertheless get judgment for nominal damages.").  Accordingly, Defendants' Motion to Dismiss Brevet's Breach of Contract claim is denied.

### C.  Brevet's Tort Claims (Counts I – IV) Are Not Precluded By The Independent Tort Doctrine

Defendants move to dismiss Brevet's claims for misappropriation and unfair competition on the ground that they are duplicative of its claim for breach of contract.  (Def. Br. 17).  Under New York law, "a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated."  *Bayerische Landesbank, New York Branch*

*v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190, 194 (N.Y. 1987)).[9]  That legal duty "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract."  *Bayerische Landesbank*, 692 F.3d at 58 (citation omitted).

As a preliminary matter, Brevet's claims against Enascor cannot be dismissed as duplicative of the breach of contract claim because Enascor was not a party to the relevant contract and Brevet has not asserted a claim against Enascor for breach of contract.  (SAC ¶¶ 72–79).  Accordingly, Brevet's tort claims clearly survive against Enascor.

With respect to Iacovacci, Brevet's complaint alleges more than the mere breach of the LLC Agreements.  With respect to its claims for unfair competition, Brevet alleges that Iacovacci used Brevet's confidential information concerning Brevet's deals, borrowers, and experience to compete against Brevet.  (SAC ¶¶ 15, 25–27, 29, 31–33).  Thus, in addition to pleading that Iacovacci disseminated Brevet's confidential information, which is the basis for Brevet's breach of contract claim, Brevet also alleges that Iacovacci competed against Brevet and misattributed Brevet's information as his own.  *See Freedom Mortg. Corp. v. Tschernia*, No. 20-CV-1206 (AJN), 2021 WL 1163807, at *7 (S.D.N.Y. Mar. 26, 2021) (unfair competition "not duplicative" of contract claim where defendants "sought to profit off a competitor's goodwill").  Moreover, the Second Circuit has held that "[w]hen a defendant breaches its contract with a plaintiff, that defendant may also breach an independent duty in tort if the defendant goes beyond a mere

---

[9] In support of their argument that Brevet's tort claims are duplicative of its breach of contract claim, Defendants rely exclusively on New York law.  (Def. Br. 17–18).  Brevet contends that the Court should evaluate Defendants' arguments with respect to the independent tort doctrine under Delaware law.  (Pl. Opp'n 22).  Because the Court finds that Brevet's tort claims should not be dismissed under the independent tort doctrine, even if New York law applied, the Court does not decide whether New York or Delaware law applies with respect to the independent tort doctrine.

breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff." *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003). The complaint alleges that Iacovacci's actions were in bad faith and done with a willful intent to harm Brevet (SAC ¶¶ 4-5, 14–17, 27–28, 32–33, 45–48). While evidence as developed may support Defendants' argument that the allegations all constitute nothing more than a potential breach of contract, at the pleading stage, Brevet's allegations are sufficient plausibly to support an inference that Defendants are liable for torts independent of the alleged breach of contract. Defendants' motion to dismiss Brevet's tort actions as duplicative is therefore denied.

### D.  The Complaint Is Not Defective For Group Pleading

Defendants last argument is that the complaint is defective because it "lumps" all four plaintiff entities together as "Brevet" and thereafter scarcely differentiates among them. (Def. Br. 18). In support of this attack on the sufficiency of Plaintiff's pleadings, Defendants cite to the unpublished summary order of the Second Circuit: *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001). (Def. Br. 18). In *Atuahene*, the plaintiff, who asserted constitutional and state common law claims, lumped all the *defendants* together in each claim and provided no factual basis to distinguish their alleged conduct. *Id.* at 34. The Second Circuit affirmed dismissal of the complaint, finding that, because of his inadequate pleadings, plaintiff had failed to give each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Id.* (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir.1961)). Here, Defendants complain that Plaintiffs — affiliated entities all of which are expressly entitled to the confidentiality protections of the LLC Agreements — were harmed by Defendants' conduct. *C.f. Manchanda v. Navient Student Loans*, No. 19CV5121, 2020 WL 5802238, at *2 (S.D.N.Y. Sept. 29, 2020) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the

complaint alerts defendants that identical claims are asserted against each defendant." (citation omitted)).  Brevet's allegations give fair notice to Defendants of what information they are alleged to have misappropriated and how they are alleged to have breached the LLC Agreements.  (*See*, *e.g.*, SAC ¶¶ 16–33, 35–36).  Defendants' motion to dismiss the Second Amended Complaint for improper group pleading is therefore denied.

## II.     Motion To Seal

In support of its Motion to Dismiss, Defendants filed, under provisional seal, the documents that it contends are the basis of Brevet's claims for misappropriation of confidential information.  (*See* Cyrulnik Decl. Exs. D–J).  Exhibits D and F to Defendants' Motion to Dismiss consist of a sourcing template and a firm overview that reflect Brevet's business model and practices, including the type, the length, and the size of transactions in which Brevet engages.  (*See* Cyrulnik Decl. Exs. D, F).  Exhibit E is an introductory email that Brevet alleges is derivative of Brevet's sourcing template and contains much of the same language.  (*See* Cyrulnik Decl. Ex. E).  Exhibits G, H, and I contain portions of Brevet internal presentations, which include details of Brevet's investment strategies and descriptions of its business model.  (*See* Cyrulnik Decl. Exs. G, H, I).  Finally, Exhibit J is a collection of Brevet business information, which contain descriptions of Brevet's borrowers and their transactions.  (*See* Cyrulnik Decl. Ex. J).

Plaintiff moves to maintain these exhibits under seal.  [ECF No. 42].  Brevet requests that these documents remain under seal because they contain Brevet's confidential and proprietary information, including financial information, information about Brevet's borrowers, and information about Brevet's business strategies and marketing plans.  (Declaration of Mark

Callahan ("Callahan Decl.") [ECF No. 43] ¶ 3).  Defendants oppose this request [ECF No. 46] and Brevet has replied [ECF No. 48].

There is a long-established presumption of immediate public access to judicial documents under both the common law and the First Amendment.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).  Accordingly, motions to seal documents must be "carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection.  *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994).

As a preliminary matter, the documents that Brevet seeks to seal were already unsealed in the New York State Action (*see* Decision and Order, *Iacovacci v. Brevet Holdings, LLC*, No. 158735/2016, Dkt. 1381 (N.Y. Sup. Ct. Mar. 29, 2021)) and the Appellate Division has affirmed that ruling.  *See Iacovacci v. Brevet Holdings, LLC*, 202 A.D.3d 570, 571, 159 N.Y.S.3d 674, 675 (1st Dep't 2022).  District Courts regularly find sealing improper where the relevant material has already been made public.  *See*, *e.g.*, *Shetty v. SG Blocks, Inc.*, No. 20CV550ARRMMH, 2021 WL 4959000, at *4 (E.D.N.Y. Oct. 26, 2021) ("I find that his motion [to seal] fails because the documents at issue have been in the public domain for over one year."); *Chigirinskiy v. Panchenkova*, 319 F. Supp. 3d 718, 739 (S.D.N.Y. 2018) (concluding that matters contained in a settlement agreement, which "might otherwise have seemed [ ] entitled to [sealing]," were not because the matter was previously disclosed in an unsealed complaint); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09-CV-4373 (SAS), 2010 WL 1416896, at *1 (S.D.N.Y. Apr. 8, 2010) (explaining that the plaintiff's request for sealing "comes too late" because the relevant motion papers had already been placed in the public record, and the press had published articles about the motion).  Indeed, the Second Circuit has previously held that even where an unsealing order

was a "serious abuse of discretion," it could not reverse the district court because "however confidential [the information] may have been beforehand, subsequent to publication it was confidential no longer." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004). Accordingly, because the materials Brevet seeks to maintain under seal are already publicly available, its request is denied.

Regardless, even were these documents still sealed in the state court proceeding, Brevet has not overcome the presumption of public access.  To determine whether a judicial document may be sealed, the Second Circuit conducts a three-step analysis.  *Lugosch*, 435 F.3d at 119–20. First, the court must decide whether the document at issue is in fact a judicial document, meaning that the document is "relevant to the performance of the judicial function and useful in the judicial process."  *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). The Second Circuit has held that "documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment."  *Lugosch*, 435 F.3d at 126.  District courts in this circuit have extended such reasoning to documents filed in support of a motion to dismiss.  *See*, *e.g.*, *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165–66 (S.D.N.Y. 2018); *Raffaele v. City of N.Y.*, No. 13-CV-4607 (KAM), 2014 WL 2573464, at *1 (E.D.N.Y. June 9, 2014).  The documents at issues here are therefore clearly judicial documents since they were submitted in support of Defendants' Motion to Dismiss.

Brevet contends that these materials are not judicial documents because they are not necessary to resolve Defendants' Motion to Dismiss, in which the Court should rely solely on the well-pleaded allegations in the Complaint.  [ECF No. 42, at 2].  But Brevet's suit against Defendants is premised on the contents of those materials and Defendants use of them.  (SAC

¶¶ 16–32).  Not only does the Complaint incorporate these documents by reference (SAC ¶¶ 16–32), but Plaintiff even cites to the specific documents at issue in its opposition to Defendants' Motion (Pl. Opp'n 2–5).  These documents are therefore "relevant to the performance of the judicial function and useful in the judicial process."  *Lugosch*, 435 F.3d at 119 (citation omitted).

After determining that the materials at issue are judicial documents, the next step is to determine the weight of the presumption of public access.  "[T]he weight to be given to the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *Id.* (citation omitted).  "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance."  *Id.*  The "presumptive right to 'public observation' is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication.'"  *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) (citation omitted).

As stated above, the Court relied on and reviewed the materials Brevet seeks to seal as part of its determination of this motion.  There is a presumption of public access to documents on which the Court relies in adjudicating a claim.  *See Lugosch*, 435 F.3d at 123 ("[T]he rationale behind access is to allow the public an opportunity to access the correctness of the judge's decision." (internal quotations and citations omitted)); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*") (explaining the importance of "professional and public monitoring" of the judiciary to its "democratic control" and concluding that "[s]uch monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions").  "The documents comprise a significant proportion of the factual record

before the Court and they pertain to matters that 'directly affect' the Court's adjudication." *Collado v. City of New York*, 193 F. Supp. 3d 286, 289 (S.D.N.Y. 2016). Accordingly, there is a heavy presumption in favor of access.

Finally, the court must weigh countervailing considerations, such as "the privacy interests of those resisting disclosure," against the presumption of public access. *See Amodeo II*, 71 F.3d at 1050–51. "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). To rebut the strong presumption of access, Brevet must offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quoting *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

Brevet has not shown there to be countervailing considerations outweighing the presumption of public disclosure. Brevet argues that Iacovacci agreed to confidentiality agreements pertaining to these materials [ECF No. 42, at 3], but Courts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents. *See*, *e.g.*, *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F.Supp.2d 409, 414 (S.D.N.Y. 2014) (holding fact that the agreement "contains a confidentiality clause is not binding here, given the public's right of access to 'judicial documents'"); *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 338 (S.D.N.Y. 2012) ("[T]he mere fact 'that the settlement agreement contains a confidentiality provision is an insufficient interest to overcome the presumption that an approved FLSA settlement agreement is a judicial record, open to the public.'"). Brevet's motion to maintain these documents under seal is therefore denied.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.  Brevet's letter request to maintain certain documents under seal is DENIED.

The Clerk of Court respectfully is requested to terminate docket entries 38 and 42.


**SO ORDERED.**

**Date:  August 31, 2022**
**New York, NY**                                              **MARY KAY VYSKOCIL**
                                                              **United States District Judge**